# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 17, 2013

Lyle W. Cayce
Clerk

No. 12-20522

KHALED ASADI,

Plaintiff–Appellant,

v.

G.E. ENERGY (USA), L.L.C.,

Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before ELROD and HIGGINSON, Circuit Judges, and JACKSON, District Judge.[*]

JENNIFER WALKER ELROD, Circuit Judge:

Plaintiff-Appellant Khaled Asadi ("Asadi") filed a complaint alleging that Defendant-Appellee G.E. Energy (USA), L.L.C. ("GE Energy") violated the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank"), 15 U.S.C. § 78u-6(h) (the "whistleblower-protection provision"), by terminating him after he made an internal report of a possible securities law violation. The district court granted GE Energy's motion to dismiss for failure to state a claim. Because Asadi was not a "whistleblower" under Dodd-Frank, we AFFIRM.

---

[*] Chief Judge of the Middle District of Louisiana, sitting by designation.

I.

In 2006, Asadi accepted GE Energy's offer to serve as its Iraq Country Executive and relocated to Amman, Jordan. At a meeting in 2010, while serving in this capacity, Iraqi officials informed Asadi of their concern that GE Energy hired a woman closely associated with a senior Iraqi official to curry favor with that official in negotiating a lucrative joint venture agreement. Asadi, concerned this alleged conduct violated the Foreign Corrupt Practices Act ("FCPA"), reported the issue to his supervisor and to the GE Energy ombudsperson for the region. Shortly following these internal reports, Asadi received a "surprisingly negative" performance review. GE Energy pressured him to step down from his role as Iraq Country Executive and accept a reduced role in the region with minimal responsibility. Asadi did not comply and, approximately one year after he made the internal reports, GE Energy fired him.[1]

Asadi filed a complaint alleging that GE Energy violated Dodd-Frank's whistleblower-protection provision by terminating him following his internal reports of the possible FCPA violation.[2] GE Energy moved to dismiss Asadi's complaint under Rule 12(b)(6) on the basis that it failed to state a claim because, *inter alia*, (1) Asadi does not qualify as a "whistleblower" under the whistleblower-protection provision, and (2) the whistleblower-protection provision does not apply extraterritorially. The district court dismissed Asadi's whistleblower-retaliation claim with prejudice, concluding that the whistleblower-protection provision "does not extend to or protect Asadi's

---

[1] Asadi learned of his termination by an email that specified, in part: "GE is exercising its right to terminate your employment as an at-will employee, as allowed under U.S. law and as described in your expatriate assignment letter. As a U.S. based employee you will be terminated in the U.S."

[2] Asadi later amended his complaint to include a breach-of-contract claim. After the district court dismissed Asadi's Dodd-Frank whistleblower-protection claim, it declined to exercise supplemental jurisdiction over Asadi's breach-of-contract claim and dismissed it without prejudice. Asadi has not challenged the district court's dismissal of his breach-of-contract claim on appeal.

extraterritorial whistleblowing activity." Having reached this conclusion, it declined to decide whether Asadi qualified as a "whistleblower" under the whistleblower-protection provision. Asadi filed a timely notice of appeal.

## II.

We review *de novo* a district court order granting a Rule 12(b)(6) motion to dismiss for failure to state a claim and may affirm on any basis supported by the record. *Torch Liquidating Trust ex rel. Bridge Assocs. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) (citation omitted). We "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The only issues on appeal are interpretations of Dodd-Frank, which we review *de novo*. *Rothe Dev., Inc. v. U.S. Dep't of Def.*, 666 F.3d 336, 338 (5th Cir. 2011).

## III.

When faced with questions of statutory construction, "we must first determine whether the statutory text is plain and unambiguous" and, "[i]f it is, we must apply the statute according to its terms." *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009) (citations omitted); *see also BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.'" (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). If the statutory text is unambiguous, our inquiry begins and ends with the text. *BedRoc Ltd.*, 541 U.S. at 183.

The parties' arguments in this case implicate several additional principles

of interpretation.  In construing a statute, a court should give effect, if possible, to every word and every provision Congress used.  *See, e.g.*, *Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant" (citation and internal quotation marks omitted)).  *But see, e.g.*, *Corley v. United States*, 556 U.S. 303, 325 (2009) (Alito, J., dissenting) ("Like other canons, the antisuperfluousness canon is merely an interpretive aid, not an absolute rule." (citing *Germain*, 503 U.S. at 254)); *United States v. Monsanto*, 491 U.S. 600, 611 (1989) ("We respect these [general canons of statutory construction], and they are quite often useful in close cases, or when statutory language is ambiguous.  But we have observed before that such interpretative canon[s are] not a license for the judiciary to rewrite language enacted by the legislature." (citation and internal quotation marks omitted)).  Also, if possible, we interpret provisions of a statute in a manner that renders them compatible, not contradictory.  *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("A court must . . . interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole." (citations and internal quotation marks omitted)).  With these principles in mind, we turn to the question presented in this appeal.

IV.

Congress enacted Dodd-Frank in the wake of the 2008 financial crisis. Section 922 of Dodd-Frank, as one component of the Act's comprehensive reform of the U.S. financial regulatory system, encourages individuals to provide information relating to a violation of U.S. securities laws to the Securities and Exchange Commission ("SEC" or "Commission").  Section 922, codified at 15 U.S.C. § 78u-6, encourages such disclosures through two related provisions that: (1) require the SEC to pay significant monetary awards to individuals who provide information to the SEC which leads to a successful enforcement action;

and (2) create a private cause of action for certain individuals against employers who retaliate against them for taking specified protected actions.[3] We must answer a relatively straightforward question relating to the latter provision in this case: whether an individual who is not a "whistleblower" under the statutory definition of that term in § 78u-6(a)(6) may, in some circumstances, nevertheless seek relief under the whistleblower-protection provision. For the reasons that follow, we hold that the plain language of the Dodd-Frank whistleblower-protection provision creates a private cause of action only for individuals who provide information relating to a violation of the securities laws to the SEC. Because Asadi failed to do so, his whistleblower-protection claim fails.

A.

We start and end our analysis with the text of the relevant statute—15 U.S.C. § 78u-6. That section is titled "Securities whistleblower incentives and protection" and contains ten subsections. The interplay between two of these subsections—(a) and (h)—is the focus of the statutory-interpretation question presented in this case.[4] Subsection (a) provides definitions for certain terms used throughout § 78u-6. Included in this list of terms defined for purposes of § 78u-6 is "whistleblower." Specifically, "[t]he term 'whistleblower' means any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws *to the Commission*, in a manner established, by rule or

---

[3] For clarity, we refer to the award provision as the "whistleblower-incentive program," and the provision protecting whistleblowers from retaliation as the "whistleblower-protection provision."

[4] The other subsections in § 78u-6 relate to the whistleblower-incentive program that provides for monetary awards to whistleblowers if the information provided to the SEC leads to a successful enforcement of a judicial or administrative action under the securities laws. Also, subsection (j) provides the SEC with the authority to issue necessary or appropriate rules and regulations that are consistent with the purposes of § 78u-6.

regulation, by the Commission." § 78u-6(a)(6) (emphasis added). This definition, standing alone, expressly and unambiguously requires that an individual provide information to the SEC to qualify as a "whistleblower" for purposes of § 78u-6. *See, e.g.*, Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 226 (1st ed. 2012) ("When . . . a definitional section says that a word 'means' something, the clear import is that this is its *only* meaning." (emphasis in original)).

Subsection (h), titled "Protection of whistleblowers," provides whistleblowers a private right of action against employers who take retaliatory actions against the whistleblower for taking certain protected actions. § 78u-6(h). Subsection (h) includes three paragraphs. Only paragraph (1), titled "Prohibition against retaliation," is relevant to this appeal. Paragraph (1) is divided into three subparagraphs. Subparagraph (A), the specific focus of this appeal, provides in its entirety:

> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—
>
> (i) in providing information to the Commission in accordance with this section;
>
> (ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or
>
> (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.), including section 10A(m) of such Act (15 U.S.C. 78f(m)), section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

§ 78u-6(h)(1)(A).

B.

Asadi concedes that he is not a "whistleblower" as that term is defined in section 78u-6(a)(6) because he did not provide any information to the SEC. Asadi maintains, however, that the whistleblower-protection provision should be construed to protect individuals who take actions that fall within section 78u-6(h)(1)(A)(iii) (*i.e.*, the third category of protected activity), even if they do not provide information to the SEC. He bases this construction of the statute on a perceived conflict between the statutory definition of "whistleblower" in section 78u-6(a)(6) and the third category of protected activity, which does not necessarily require disclosure of information to the SEC.[5] Asadi has some case law,[6] as well as the SEC regulation on this issue, in his corner. Our examination of the statutory language of Dodd-Frank, however, leads us to reject Asadi's construction of the whistleblower-protection provision. As explained below, the

---

[5] Notably, however, Asadi does not maintain that the definition of "whistleblower" in § 78u-6(a)(6) is ambiguous. Similarly, he does not contend that the categories of lawful actions by a whistleblower in § 78u-6(h)(1)(A) are ambiguous. Nevertheless, he asserts that individuals who take actions that fall within the third category of lawful actions are protected, whether or not they qualify as a "whistleblower" as defined in § 78u-6(a)(6).

[6] District courts that have considered this question have concluded that the whistleblower-protection provision, as enacted, is either conflicting or ambiguous. *See, e.g.*, *Kramer v. Trans–Lux Corp.*, No. 3:11CV1424 (SRU), 2012 WL 4444820, at *4 (D. Conn. Sept. 25, 2012); *Nollner v. S. Baptist Convention, Inc.*, 852 F. Supp. 2d 986, 994 n.9 (M.D. Tenn. 2012); *Egan v. TradingScreen, Inc.*, No. 10 Civ. 8202 (LBS), 2011 WL 1672066, at *4–5 (S.D.N.Y. May 4, 2011). For instance, in *Egan*, the court explained that "a literal reading of the definition of the term 'whistleblower' in 15 U.S.C. § 78u-6(a)(6), requiring reporting to the SEC, would effectively invalidate § 78u-6(h)(1)(A)(iii)'s protection of whistleblower disclosures that do not require reporting to the SEC." *Egan*, 2011 WL 1672066, at *4; *see also Nollner*, 852 F. Supp. 2d at 994 n.9 (approvingly citing *Egan* and explaining that "the plain terms of anti-retaliation category (iii), which do *not* require reporting to the SEC, appear to conflict with the [Dodd-Frank Act's] definition of 'whistleblower' at § 78u-6(h)(1)(A)(iii), which defines a whistleblower as anyone who reports securities violations 'to the Commission'" (emphasis in original)). In *Kramer*, the district court focused on the same interplay between § 78u-6(a)(6) and § 78u-6(h)(1)(A)(iii) and concluded that it was not "unambiguously clear that the Dodd-Frank Act's retaliation provision only applies to those individuals who have provided information relating to a securities violation to the Commission." *Kramer*, 2012 WL 4444820, at *4.

Each district court, after concluding that the statute was conflicting or ambiguous, concluded that the Dodd-Frank whistleblower-protection provision extends to protect certain individuals who do not make disclosures to the SEC. *See Nollner*, 852 F. Supp. 2d at 994 n.9; *Kramer*, 2012 WL 4444820, at *4–5; *Egan*, 2011 WL 1672066, at *4–5.

perceived conflict between § 78u-6(a)(6) and § 78u-6(h)(1)(A)(iii) rests on a misreading of the operative provisions of § 78u-6.

C.

Under Dodd-Frank's plain language and structure, there is only one category of whistleblowers: individuals who provide information relating to a securities law violation to the SEC. The three categories listed in subparagraph § 78u-6(h)(1)(A) represent the protected activity in a whistleblower-protection claim.    They do not, however, define which individuals qualify as whistleblowers.

This construction of the whistleblower-protection provision follows directly from the plain language of § 78u-6(h)(1)(A): "No employer may discharge . . . or in any other manner discriminate against, a whistleblower . . . because of any lawful act done by the whistleblower" in taking any of the three categories of protected actions. § 78u-6(h)(1)(A). This statutory language clearly answers two questions: (1) who is protected; and (2) what actions by protected individuals constitute protected activity. First, and most critically to this appeal, the answer to the first question is "a whistleblower." *See* § 78u-6(h)(1)(A) ("No employer may discharge . . . *a whistleblower* . . . ." (emphasis added)).    Second, the answer to the latter question is "any lawful act done by the whistleblower" that falls within one of the three categories of action described in the statute. *See id.*

The statutory text describing these three categories of protected activity is also unambiguous.  The text of § 78u-6(h)(1)(A)(i) protects whistleblowers from employer retaliation for the action that made the individual a whistleblower in the first instance, *i.e.*, providing information relating to a securities law violation to the SEC.  § 78u-6(h)(1)(A)(i) ("No employer may discharge . . . a whistleblower . . . because of any lawful act done by the whistleblower—(i) in providing information to the Commission in accordance

with this section."). The text of § 78u-6(h)(1)(A)(ii) protects whistleblowers from retaliation for their participation in the investigation, and possible judicial or administrative action of the SEC, that follows on the heels of the information initially provided to the SEC.[7] § 78u-6(h)(1)(A)(ii) ("No employer may discharge . . . a whistleblower . . . because of any lawful act done by the whistleblower . . . (ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information.").

Congress's description of the final category of protected activity is similarly plain and unambiguous. The text of § 78u-6(h)(1)(A)(iii) protects whistleblowers from retaliation for making disclosures that are required or protected under any law, rule, or regulation subject to the jurisdiction of the SEC. § 78u-6(h)(1)(A)(iii) ("No employer may discharge . . . a whistleblower . . . because of any lawful act done by the whistleblower . . . (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.), including section 10A(m) of such Act (15 U.S.C. 78f(m)), section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.").

Although Asadi does not contend that the language used in § 78u-6(h)(1)(A)(iii) is, by itself, ambiguous, he maintains that it conflicts with the definition of "whistleblower." The basis for his contention is that an individual can take actions falling within this category and, if he does not report

---

[7] Section 78u-6 directly envisions information provided by "whistleblowers" to result in an investigation and, if appropriate, the SEC's initiation of a judicial or administrative action, leading to the potential of monetary awards for the "whistleblower." *See* § 78u-6(a), (b). The inclusion of this category of protection from retaliation indicates that Congress determined that protection from retaliation was appropriate not only for the initial disclosure by the "whistleblower," but also for the whistleblower's continued participation in the subsequent investigation and any resulting judicial or administrative actions.

information to the SEC, fail to qualify as a "whistleblower" under § 78u-6(a)(6). While it is correct that individuals may take protected activity yet still not qualify as a whistleblower, that practical result does not render § 78u-6(h)(1)(A)(iii) conflicting or superfluous. As discussed below, under the plain language and structure of Dodd-Frank, there are not conflicting definitions of "whistleblower," and § 78u-6(h)(1)(A)(iii) is not superfluous.

First, the definition of "whistleblower" and the third category of protected activity do not conflict. Conflict would exist between these statutory provisions only if we read the three categories of protected activity as additional definitions of three types of whistleblowers. Under that reading—which, as described above, the plain text of the statute does not support—individuals could take actions falling within the third category of protected activity yet fail to qualify under the more narrow definition of whistleblower.

The language and structure of the whistleblower-protection provision, however, does not support Asadi's construction. Importantly, the placement of the three categories of protected activity in subsection (h) follows the phrase "[n]o employer may discharge . . . or in any other manner discriminate against, a *whistleblower* . . . because of any lawful act done by the *whistleblower* . . . ." § 78u-6(h)(1)(A) (emphasis added). The use of the term "whistleblower," as compared with terms such as "individual" or "employee," is significant.[8] If Congress had selected the terms "individual" or "employee," Asadi's construction of the whistleblower-protection statute would follow more naturally because the use of such broader terms would indicate that Congress

---

[8] We also note that the heading of subsection (h) is "[p]rotection of *whistleblowers*." § 78u-6(h) (emphasis added). While this heading cannot limit the plain meaning of the text, it lends support to the conclusion that the whistleblower-protection provision applies only to those individuals who qualify as "whistleblowers" as defined in § 78u-6(a)(6). *See Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) ("To be sure, a . . . heading cannot substitute for the operative text of the statute. Nonetheless, statutory titles and section headings are tools available for the resolution of a doubt about the meaning of a statute." (citations and internal quotation marks omitted)).

No. 12-20522

intended any individual or employee—not just those individuals or employees who qualify as a "whistleblower"—to be protected from retaliatory actions by their employers.[9] Congress, however, used the term "whistleblower" throughout subsection (h) and, therefore, we must give that language effect.

Accordingly, § 78u-6(h)(1)(A) does not provide alternative definitions of the term "whistleblower" for purposes of the whistleblower-protection provision. Instead, the text of § 78u-6 clearly and unambiguously provides a single definition of "whistleblower." Therefore, the whistleblower-protection provision does not contain conflicting definitions of "whistleblower."

Second, the interplay between § 78u-6(a)(6) and § 78u-6(h)(1)(A)(iii) does not render § 78u-6(h)(1)(A)(iii) superfluous. Importantly, the third category of protected activity has effect even when we construe the protection from retaliation under Dodd-Frank to apply only to individuals who qualify as "whistleblowers" under the statutory definition of that term. Specifically, this category protects whistleblowers from retaliation, based not on the individual's

---

[9] GE Energy maintains that the legislative history indicates that Congress specifically rejected a broader description of individuals eligible to raise claims under the whistleblower-protection provision. Specifically, GE Energy explains that the bill initially passed by the House did not use the term "whistleblower" in describing the individuals protected from employer retaliation; instead, it used the phrase "employee, contractor, or agent." Wall Street Reform and Consumer Protection Act of 2009, H.R. 4173, 111th Cong. § 7203(g)(1)(A) (as passed by House, Dec. 11, 2009) ("No employer may discharge . . . or in any other manner discriminate against an employee, contractor, or agent . . . because of any lawful act done by the employee, contractor, or agent in providing information to the Commission . . . ."). The Senate's subsequent version of the bill replaced the use of the phrase "employee, contractor, or agent" with "whistleblower" and restructured the format of the provision to resemble the enacted version. Restoring American Financial Stability Act of 2010, H.R. 4173, 111th Cong. § 922(h)(1)(A) (as passed by Senate, May 20, 2010). According to GE Energy, the enactment of the Senate bill, which predicates eligibility for protection from employer retaliation on qualifying as a "whistleblower," demonstrates that Congress eventually rejected the broader description of individuals eligible for protection used in the initial House bill.

We do not rely on this legislative history in our analysis of this case. *See, e.g.*, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("[T]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material."); *Khalid v. Holder*, 655 F.3d 363, 371 (5th Cir. 2011) (declining to "recite legislative history given the clarity of the statutory text" (quoting *Freeman v. Quicken Loans, Inc.*, 626 F.3d 799, 804 n.9 (5th Cir. 2010)).

disclosure of information to the SEC but, instead, on that individual's other possible required or protected disclosure(s).  § 78u-6(h)(1)(A)(iii).  An example illustrates the effect of this third category of protected activity for whistleblowers:

Assume a mid-level manager discovers a securities law violation.  On the day he makes this discovery, he immediately reports this securities law violation (1) to his company's chief executive officer ("CEO") and (2) to the SEC. Unfortunately for the mid-level manager, the CEO, who is not yet aware of the disclosure to the SEC,[10] immediately fires the mid-level manger.  The mid-level manager, clearly a "whistleblower" as defined in Dodd-Frank because he provided information to the SEC relating to a securities law violation, would be unable to prove that he was retaliated against because of the report to the SEC. Accordingly, the first and second category of protected activity would not shield this whistleblower from retaliation.  The third category of protected activity, however, protects the mid-level manager.   In this scenario, the internal disclosure to the CEO, a person with supervisory authority over the mid-level manager, is protected under 18 U.S.C. § 1514A, the anti-retaliation provision enacted as part of the Sarbanes-Oxley Act of 2002 ("the SOX anti-retaliation provision").  Accordingly, even though the CEO was not aware of the report to the SEC at the time he terminated the mid-level manager, the mid-level manager can state a claim under the Dodd-Frank whistleblower-protection provision because he was a "whistleblower" and suffered retaliation based on

---

[10] Under 17 C.F.R. § 240.21F-9(a), "[t]o be considered a whistleblower . . . , you must submit your information about a possible securities law violation by either of these methods: (1) Online, through the Commission's Web site . . . ; or (2) By mailing or faxing a Form TCR (Tip, Complaint or Referral) . . . to the SEC Office of the Whistleblower . . . ."  Regardless of which of these two methods a whistleblower utilizes to submit information to the SEC, the whistleblower's employer will not necessarily immediately be aware of the disclosure, unless of course, the whistleblower informs her employer that she has made such a disclosure.

his disclosure to the CEO, which was protected under SOX.[11]

As this example demonstrates, under the plain text of Dodd-Frank, the third category of protected activity is not superfluous. It protects those individuals who qualify as whistleblowers from retaliation on the basis of other required or protected disclosures. Accordingly, we decline to adopt Asadi's construction of the whistleblower-protection provision on the basis that § 78u-6(h)(1)(A)(iii) is superfluous.

Moreover, it is Asadi's suggested construction of the whistleblower-protection provision that arguably renders statutory text superfluous. Specifically, Asadi's suggested statutory construction would read the words "to the Commission" out of the definition of "whistleblower" for purposes of the whistleblower-protection provision. Construing the statute in this manner would violate the surplusage canon, that every word is to be given effect. *See, e.g.*, *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (citations and internal quotation marks omitted)); *Duncan*, 533 U.S. at 174. Accordingly, even if the whistleblower-protection provision were ambiguous, we would be reluctant to read the provision as suggested by Asadi because such a construction would treat "to the Commission" as mere surplusage.

D.

Asadi's construction of the whistleblower-protection provision is problematic for another reason. Specifically, construing the Dodd-Frank whistleblower-protection provision to extend beyond the statutory definition of

---

[11] In this scenario, the mid-level manager could also raise a claim under the SOX anti-retaliation provision. The Dodd-Frank whistleblower-protection provision, however, as discussed *infra*, provides greater levels of protection. Accordingly, there is an incentive not only to report such violations internally, but also to inform the SEC of the securities violation.

"whistleblowers" renders the SOX anti-retaliation provision, for practical purposes, moot.[12] Such a construction has this impact because an individual who makes a disclosure that is protected by the SOX anti-retaliation provision could also bring a Dodd-Frank whistleblower-protection claim on the basis that the disclosure was protected by SOX. It is unlikely, however, that an individual would choose to raise a SOX anti-retaliation claim instead of a Dodd-Frank whistleblower-protection claim.

Three separate, but important, distinctions between the SOX anti-retaliation and Dodd-Frank whistleblower-protection claims lead to this practical result. First, the Dodd-Frank whistleblower-protection provision provides for greater monetary damages because it allows for recovery of two times back pay, whereas the SOX anti-retaliation provision provides for only back pay. *Compare* 15 U.S.C. § 78u-6(h)(1)(C), *with* 18 U.S.C. § 1514A(c)(2). Second, individuals who bring a SOX anti-retaliation claim must first file a complaint with the Secretary of Labor and, only if the Secretary of Labor has not issued a final decision within 180 days, may then proceed to file a claim in a United States district court. 18 U.S.C. § 1514A(b)(1). Alternatively, individuals may bring a Dodd-Frank whistleblower-protection claim without first filing their claim with a federal agency. *See* 15 U.S.C. § 78u-6(h). Third, the applicable statute of limitations is substantially longer for Dodd-Frank whistleblower-protection claims. *Compare* 15 U.S.C. § 78u-6(h)(1)(B)(iii) (between six and ten years after the violation occurs), *with* 18 U.S.C. § 1514A(b)(2)(D) (between 180 days after the violation occurs and 180 days after the employee becomes aware of the violation).

---

[12] Given the language in § 922 of Dodd-Frank, construing the whistleblower-protection provision to have this impact is particularly odd. Specifically, § 922—which contains the securities-whistleblower program—also amended the applicable statute of limitations for the SOX anti-retaliation provision. Dodd-Frank § 922(b)(1) (amending 18 U.S.C. § 1514A(c)(2)). Section 922 extends the statute of limitations for SOX anti-retaliation claims from 90 days after an employer's violation of the anti-retaliation provision to 180 days after such a violation or 180 days after the date on which the employee becomes aware of the violation. *Id.*

No. 12-20522

Accordingly, if we were to accept Asadi's construction of the whistleblower-protection provision, the SOX anti-retaliation provision, and most importantly, its administrative scheme, for practical purposes, would be rendered moot.

E.

Based on our examination of the plain language and structure of the whistleblower-protection provision, we conclude that the whistleblower-protection provision unambiguously requires individuals to provide information relating to a violation of the securities laws *to the SEC* to qualify for protection from retaliation under § 78u-6(h).

V.

Finally, Asadi maintains that we should defer to the SEC's recent regulation construing the Dodd-Frank whistleblower-protection provision. Asadi correctly notes that the SEC's final rule adopts his suggested construction of the whistleblower-protection provision and expands the meaning of a "whistleblower" beyond the statutory definition. The language of the regulation provides:

> (1) For purposes of the anti-retaliation protections afforded by Section 21F(h)(1) of the Exchange Act (15 U.S.C. 78u-6(h)(1)), you are a whistleblower if:
>
> (i) You possess a reasonable belief that the information you are providing relates to a possible securities law violation (or, where applicable, to a possible violation of the provisions set forth in 18 U.S.C. 1514A(a)) that has occurred, is ongoing, or is about to occur, and;
>
> (ii) You provide that information in a manner described in Section 21F(h)(1)(A) of the Exchange Act (15 U.S.C. 78u-6(h)(1)(A)).

17 C.F.R. § 240.21F-2(b)(1). Simply put, this regulation, instead of using the statute's definition of "whistleblower," redefines "whistleblower" more broadly by providing that an individual qualifies as a whistleblower even though he never reports any information to the SEC, so long as he has undertaken the

15

protected activity listed in 15 U.S.C. § 78u-6(h)(1)(A). *See id.* Moreover, the regulation unquestionably defines whistleblower more broadly for the prohibition against retaliation than it does for eligibility for an award. The plain language of § 78u-6 does not support this distinction.

As discussed above, Congress defined "whistleblower" in § 78u-6(a)(6), and did so unambiguously. Congress specified that a "whistleblower," not merely any individual, is protected from employer retaliation on the basis of the whistleblower's protected activities. The statute, therefore, clearly expresses Congress's intention to require individuals to report information to the SEC to qualify as a whistleblower under Dodd-Frank. Because Congress has directly addressed the precise question at issue, we must reject the SEC's expansive interpretation of the term "whistleblower" for purposes of the whistleblower-protection provision. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–44 (1984); *id.* at 842–43 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."); *see also Khalid*, 655 F.3d at 371 ("'Congress has directly spoken to the precise question at issue,' and thus there is no room for the agency to impose its own answer to the question." (quoting *Chevron*, 467 U.S. at 842–44)).

Moreover, the SEC's regulations concerning the Dodd-Frank whistleblower-protection provision are inconsistent. While 17 C.F.R. § 240.21F-2(b)(1) appears to adopt a broader definition of "whistleblower," as described above, 17 C.F.R. § 240.21F-9, which governs the procedures for submitting original information to the SEC, explicitly requires that an individual submit information about a possible securities law violation to the SEC. Specifically, 17 C.F.R. § 240.21F-9 provides:

> To be considered a whistleblower under Section 21F of the Exchange Act (15 U.S.C. 78u-6(h)), you must submit your information about a possible securities law violation by either of

these methods:

(1) Online, through the Commission's Web site . . . ; or

(2) By mailing or faxing a Form TCR (Tip, Complaint or Referral) (referenced in § 249.1800 of this chapter) to the SEC Office of the Whistleblower . . . .

*Id.* The SEC's inconsistency in defining the term "whistleblower" for purposes of the Dodd-Frank whistleblower-protection provision does not strengthen Asadi's position that the SEC's interpretation "reasonably effectuate[s] Congress's intent." *Texas v. United States*, 497 F.3d 491, 506 (5th Cir. 2007).

## VI.

We conclude that the plain language of § 78u-6 limits protection under the Dodd-Frank whistleblower-protection provision to those individuals who provide "information relating to a violation of the securities laws" to the SEC. § 78u-6(a)(6). Asadi did not provide any information to the SEC; therefore, he does not qualify as a "whistleblower."[13] Accordingly, we AFFIRM the district court's dismissal of Asadi's Dodd-Frank whistleblower-protection claim.

---

[13] Because Asadi's claim fails on the basis that he is not a whistleblower, we need not reach the remaining issues on appeal in this case. *See, e.g.*, *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330 (5th Cir. 2003) (declining to address issues that were not necessary to affirm the district court's ruling on a motion to dismiss).