DENNIS JACOBS, Circuit Judge,
dissenting:
The majority and the Securities and Exchange Commission (“SEC”) have altered a federal statute by deleting three words (“to the Commission”) from the definition of “whistleblower” in the Dodd-Frank Act. No doubt, my colleagues in the majority, assisted by the SEC or not, could improve many federal statutes by tightening them or loosening them, or recasting or rewriting them. I could try my hand at it. But our obligation is to apply congressional statutes as written. In this instance, the alteration creates a circuit split, and places us firmly on the wrong side of it. See Asadi v. G.E. Energy (USA), LLC, 720 *156 F.3d 620 (5th Cir.2013). I respectfully dissent.
I
Persons who report certain violations of the securities laws are protected from retaliation under (at least) two federal statutes. Sarbanes-Oxley protects employees who blow a whistle to management or to regulatory agencies; Dodd-Frank protects “whistleblowers,” defined as persons who report violations “to the Commission.” 15 U.S.C. § 78u-6(a)(6). Dodd-Frank has a longer statute of limitations, doubles the collectible back-pay, and requires no administrative exhaustion. The plaintiff in this case reported the violation to his employer, and did not report it “to the [Securities and Exchange] Commission,” id., and he is therefore protected from retaliation under Sarbanes-Oxley only. But the SEC and the majority perceive a hole in coverage, or an insufficiency of remedy, and are patching.
The statutory provisions relevant to this case are few. The Dodd-Frank Act defines the word “whistleblower” in one sentence, and provides that this definition “shall apply” anywhere else “[i]n this section”:
(a) Definitions
In this section the following definitions shall apply:
[...]
(6) Whistleblower
The term “whistleblower” means any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws to the [Securities and Exchange] Commission, in a manner established, by rule or regulation, by the Commission.
15 U.S.C. § 78u-6(a)(6). “This definition, standing alone, expressly and unambiguously requires that an individual provide information to the SEC to qualify as a ‘whistleblower’ for purposes of § 78u-6.” Asadi, 720 F.3d at 623. A definition is one of the “prominent manner[s]” for limiting the meaning of statutory text. King v. Burwell, — U.S. -, 135 S.Ct. 2480, 2495, 192 L.Ed.2d 483 (2015); see also United States v. DiCristina, 726 F.3d 92, 99 (2d Cir.2013) (quoting Groman v. IRS, 302 U.S. 82, 86, 58 S.Ct. 108, 82 L.Ed. 63 (1937) (“When an exclusive definition is intended the words ‘means’ is employed.”)).
Later, within the same statutory section, in a provision titled “Protection of whistle-blowers,” Dodd-Frank creates a private cause of action for “whistleblowers”:
(h) Protection of whistleblowers
(1) Prohibition against retaliation
(A) In general
No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—
(i) in providing information to the Commission in accordance with this section;
(ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or
(iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j-l(m) of this title, section 1513(e) of Title 18, and any other law, rule, or regulation *157 subject to the jurisdiction of the Commission.
15 U.S.C. § 78u-6(h)(l)(A)(emphases added).
Reading the definition and the substantive provision together “clearly answers two questions: (1) who is protected; and (2) what actions by protected individuals constitute protected activity.” Asadi, 720 F.3d at 625. As the Fifth Circuit put it, “the answer to the first question is ‘a whistleblower.’ ” Id. (quoting 15 U.S.C. § 78u-6(h)(l)(A) (“No employer may discharge ... a whistleblower....” (emphasis added))). And, just as easy, “the answer to the latter question is ‘any lawful act done by the whistleblower’ that falls within one of the three categories of action described in the statute.” Id. (quoting 15 U.S.C. § 78u-6(h)(l)(A)).
.Berman alleges that he made “disclosures that are required or protected under the Sarbanes-Oxley Act of 2002,” 15 U.S.C. § 78u-6(h)(l)(A) — in particular, he alleges that he reported a securities law violation to his employer. But he does not allege facts that make him a “whistleblower” as that term is defined in Dodd-Frank. Nor could he — he concedes that before his termination, he never reported anything “to the [Securities and Exchange] Commission.” 15 U.S.C. § 78u-6(a)(6).
II
The majority hardly disputes that my reading (and the reading given in Asadi) is the more natural reading of the statute. But the majority extends deference to an SEC regulation that alters the unambiguous definition of “whistleblower” to include anyone who reports a securities law violation “in a- manner described in ... 15 U.S.C. 78u-6(h)(l)(A),” 17 C.F.R. § 240.21F-2(b)(l), including those who report a securities violation to their employer only. According to the majority, there is “arguable tension,” Maj. Op. at 147, between the definition and the substantive whistleblower-protection provisions, and that is deemed enough for the SEC’s interpretation to survive under Chevron. I would apply the unambiguous statutory text.
A. The majority assumes its own conclusion, claiming that “subdivision (iii) [of 15 U.S.C. § 78u-6(h)(l)(A) ] ... purports to protect employees from retaliation for making reports required or protected by Sarbanes-Oxley”. Maj. Op. at 153-54 (emphasis added). That is a bad misreading, tantamount to a misquotation. Dodd-Frank’s whistleblower-protection provisions do not mention this (generic) employee. Instead, the statute lists three ways that “a whistleblower ” may take protected activity (in one case, by making disclosures protected under Sarbanes-Oxley, see 15 U.S.C. § 78u — 6(h)(1)(A)(iii)). And “whis-tleblower” is a defined term. So subdivision (iii) only protects someone who (1) makes a protected disclosure under Sar-banes-Oxley, and (2) also satisfies Dodd-Frank’s definition of “whistleblower.” • If the statute used the word “employee! ],” Maj. Op. at 154, Berman might have a claim. He does not because the phrasing is a coinage of the majority.
The majority asks: “Who but ‘employees’ could be discriminated against by an ‘employer’ in the terms and conditions of ‘employment?’ ” Maj. Op. at 154 n. 9. My answer? A whistleblower. (Congress apparently agrees. See 15 U.S.C. § 78u-6(h)(1)(A) (“No employer may ... discriminate against[] a whistleblower in the terms and conditions of employ-ment_”).)
The (generic) “employee” is nevertheless protected: in the Sarbanes-Oxley whistle-blower-protection provision. See 18 U.S.C. § 1514A(a) (a publicly-traded company *158 may not “discriminate against an employee ” because of lawful whistleblowing activity) (emphasis added). The majority ignores the distinction Congress drew in the two statutes.
B. The majority claims repeatedly that “the issue presented is whether the ‘whis-tleblower’ definition in subsection 21F(a)(6) of Dodd-Frank applies to subdivision (iii) of subsection 21F(h)(l)(A).” Maj. Op. at 147; see also id. at 150-51. To answer that question, the majority looks here, there and everywhere-except to the statutory text. But the definitions section is unambiguous: “In this section the following definitions shall apply.” 15 U.S.C. § 78u-6(a) (emphasis added). And all of the relevant statutory provisions in this case appear “[i]n this section” — that is, section 78u-6 of title 15 of the U.S.Code. Accordingly, when Congress used the word “whistleblower” in 15 U.S.C. 78u-6(h)(l)(A), it “mean[t] any individual who provides ... information relating to a violation of the securities laws to the Commission.” 15 U.S.C. § 78u-6(a)(6).
The thing about a definition is that it is, well, definitional.
C. What appears to animate the majority’s,. finding of “arguable tension” is that the natural reading of the statutory text would leave 15 U.S.C. § 78u-6(h)(l)(A)(iii) with “extremely limited scope,” Maj. Op. at 151, affording incremental protection only for individuals who suffer retaliation for reporting to their employer after having already made a report to the SEC. But the majority simply assumes that this would be a “rare example,” Maj. Op. at 152, because the two reports would have to be “simultaneous,” Maj. Op. at 150-51, or at least “nearly simultaneous,” Maj. Op. at 152, and that, because simultaneity would be so rare, Congress could not have bothered its head over it. The majority does not explain why simultaneous reporting is required. I cannot see why it would be. Moreover, someone might well fire off complaints of illegal' activity more or less at once to one or more of everyone and anyone who might listen: corporate officers or directors, the SEC, the newspaper, a prosecutor, members of Congress, and so on.
In any event, the majority has no support for the proposition that when a plain reading of a statutory provision gives it an “extremely limited” effect, the statutory provision is impaired or ambiguous. The U.S.Code is full of statutory provisions with “extremely limited” effect; there is no canon that counsels reinforcement of any sub-sub-sub-subsection that lacks a paradigm-shift.[1] The majority is thrown back on what it calls euphemistically “the realities of the legislative process.” Maj. Op. at 154. By that, it is suggested that Congress is too busy or confused to draft wording that achieves goals consistent with the intent of the SEC.[2]
*159 D. The majority observes that the statutory text as written gives “little, if any” protection to lawyers who report violations to employers only, or do so first — and who may be required to do so. Maj. Op. at 152. As the majority explains, lawyers and auditors are subject to a web of. statutory, contractual, and ethical obligations that impact the timing and manner in which they report violations, whether to employers or to regulatory agencies or to prosecutors. Sometimes these obligations require disclosure; sometimes they require confidentiality. Congress may well have considered that additional incentives should not be offered to get lawyers and auditors to fulfill existing professional duties, for the same reason reward posters often specify that the police are ineligible.
Ill
The majority relies almost wholly on King v. Burwell, — U.S.-, 135 S.Ct. 2480, 192 L.Ed.2d 483 (2015). That case does not do the work the majority needs done.
A. King v. Burwell is not a wholesale revision of the Supreme Court’s statutory interpretation jurisprudence, which for decades past has consistently honored plain text over opportunistic inferences about legislative history and purpose. Had the Supreme Court intended an avulsive change, it would not have done so sub silentio. Just ten days before King v. Burwell came down, the Court reinforced and applied the principle that a judge’s “job is to follow the text even if doing so will supposedly undercut a basic objective of the statute.” Baker Botts LLP v. ASARCO LLC, — U.S.-, 135 S.Ct. 2158, 2169, 192 L.Ed.2d 208 (2015) (internal quotation marks omitted); see also id. (Soto-mayor, /., concurring in part and concurring in the judgment) (“Given the clarity of the statutory language, it would be improper to allow policy considerations to undermine the American Rule in this case.”). Nothing in King v. Burwell suggests that, in the fortnight that intervened after ASARCO, the Court repented of that holding- — let alone the scores of cases preceding ASARCO that say the same thing. See, e.g., Pavelic & LeFlore v. Marvel Entm’t Grp., 493 U.S. 120, 126, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989) (“Our task is to apply the text, not to improve upon it.”).
B. To the extent the Supreme Court departed from the plain statutory text in King v. Burwell, it expressly relied on most unusual circumstances. The Court adapted wording to avoid what it considered the upending of a ramified, hugely consequential enactment: “Congress passed the Affordable Care Act to improve health insurance markets, not to destroy them.” 135 S.Ct. at 2496.
Here, the sole consequence of applying the statute as written is that those who report securities violations only to their employer will receive statutory protection that in the SEC’s view is sub-optimal. They will be protected under Sarbanes-Oxley, but not Dodd-Frank- — that is, they will enjoy the same protection every securities whistleblower had before the passage of Dodd-Frank in 2010, and more protection than any securities whistleblower had before the passage of Sarbanes-Oxley in 2002. No markets collapse, no castles fall. A shorter statute of limitations may be inconvenient for some plaintiffs, but it does not threaten the entire statutory scheme. The only palpable danger lurking here is that bureaucrats and federal judges assume and exercise power to redraft a statute to give it a more respectable reach.
*160 King v. Burwell was not animated by a perceived need to afford greater impact to a small phrase; to the contrary, the Court rejected the idea that “Congress made the viability of the entire Affordable Care Act turn on the ultimate ancillary provision: a sub-sub-sub section of the Tax Code.” 135 S.Ct. at 2495. In rejecting that approach, the Court emphasized that categorical guidance as to congressional intent should better be looked for in a more predictable location — like a definitions section:
Had Congress meant to limit tax credits to State Exchanges, it likely would have done so in the definition of ‘applicable taxpayer,’ or in some other prominent manner. It would not have used such a winding path of connect-the-dots provisions about the amount of the credit.

Id.

For the purpose of the provision at issue here, Congress expressed its meaning in a “prominent manner” — in the definitions section. That is exactly where the Court said one should look, and where the Court said that Congress should have inserted its limiting language about Affordable Care Act subsidies if it wanted the language interpreted strictly. In our case the majority follows the sort of “winding path of connect-the-dots provisions” that the Supreme Court ridiculed.
* * *
I vote to affirm. “If the statutory language is plain, we must enforce it according to its terms.” King v. Burwell, 135 S.Ct. at 2489. The Court did not mean in King v. Burwell to revisit the era when judges could cast aside plain statutory text just because they harbor “doubt[s]” about what was going on in the heads of individual “conferees” during the legislative process. See Maj. Op. at 155.

. The majority properly disclaims reliance on the absurdity canon, see Maj. Op. at 150, - presumably recognizing that there is nothing absurd about a plain reading of the whistle-blower definition in Dodd-Frank. Compare Church of the Holy Trinity v. United States, 143 U.S. 457, 460, 12 S.Ct. 511, 36 L.Ed. 226 (1892) ("If a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity.”).

. The regulation at issue reflects the SEC’s territorial interests, not its own reading. Until only yesterday or so, a separate SEC regulation specified the procedures by which a Dodd-Frank whistleblower "must” report a violation-either by mail or fax "to the SEC Office of the Whistleblower” in Washington, D.C., or online through the SEC’s website. See 17 C.F.R. § 240.21F-9(a). After oral argument, the SEC issued an "interpretive rule” amending its regulations to conform to the error it has (successfully) argued here. See *159 SEC Release No. 34-75592, 80 Fed.Reg. 47,-829 (Aug. 10, 2015).