# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 21, 2018

No. 17-11429

Lyle W. Cayce
Clerk

CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE,

> Plaintiff,

v.

MARY SUE RIDDLE,

> Defendant Third Party Plaintiff – Appellant,

v.

BANK OF AMERICA, N.A.,

> Third Party Defendant – Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before KING, ELROD, and HAYNES, Circuit Judges.[*]

JENNIFER WALKER ELROD, Circuit Judge:

Mary Sue Riddle, who took out a home-equity loan from Bank of America, alleges that the bank is vicariously liable for the failure of the bank's

---

[*] Judge Haynes concurs in the judgment of affirmance and agrees with the reasoning of Section II.A.  She would not reach the issue in Section II.B, so she does not join in the alternative holding.

No. 17-11429

loan servicer to comply with the Real Estate Settlement Procedures Act (RESPA). The district court dismissed Riddle's claims under Rule 12(b)(6). We affirm for two independent reasons. First, Riddle did not plead an agency relationship between Bank of America and the loan servicer, an essential element of a vicarious liability claim. Second, even if Bank of America had an agency relationship with the loan servicer, the bank cannot be held vicariously liable, as a matter of law, for the servicer's alleged RESPA violations.

I.

In December 2006, Mary Sue Riddle executed a home-equity note with Bank of America for a loan of $127,000. To secure her obligations on the note, Riddle executed a security instrument—a Homestead Lien Contract and Deed of Trust on her property in San Angelo, Texas—in favor of Bank of America. In September 2012, Bank of America sent a letter to Riddle stating that Ocwen Loan Servicing, LLC (Ocwen), would start servicing the loan.[1] In January 2015, Bank of America assigned the loan, including the security interest in Riddle's property, to Christiana Trust, a division of the Wilmington Savings Fund Society. In April 2015, Ocwen notified Riddle that BSI Financial Services (BSI) would take over as the new loan servicer.

In October 2016, Christiana Trust filed a complaint against Riddle for judicial foreclosure of her property, alleging that Riddle had failed to make payments on the note. In response, Riddle filed an answer, counterclaims against Christiana Trust, and a third-party complaint against Ocwen, BSI, and Bank of America. Bank of America responded to Riddle's complaint with a Rule 12(b)(6) motion to dismiss. Riddle then filed both an amended complaint

---

[1] Generally, loan servicers take care of "the administrative aspects of a loan." *Loan Servicing*, Investopedia (Mar. 26, 2018), https://www.investopedia.com/terms/l/loan_servicing.asp. This includes "sending monthly payment statements and collecting monthly payments," as well as "maintaining records of payments and balances." *Id.*

against the same third-party defendants and a response in opposition to Bank of America's motion to dismiss the original third-party complaint. The amended complaint—like the original one—includes, as relevant for this appeal,[2] claims under the Real Estate Settlement Procedures Act (RESPA), a federal statute that governs the procedures of mortgage loans. Bank of America quickly moved to dismiss the amended third-party complaint, too. In her response opposing this second motion to dismiss, Riddle clarified her RESPA theory against Bank of America, alleging that "Ocwen was [Bank of America's] servicing agent" and that Bank of America "is vicariously liable for [Ocwen's] RESPA violations."

The district court dismissed all of Riddle's claims against Bank of America with prejudice.[3] Soon after, Riddle filed a motion for reconsideration, which the district court denied. Riddle then filed a notice of interlocutory appeal.[4]

---

[2] Riddle's amended third-party complaint includes claims for breach of contract, violations of the Texas Debt Collection Practices Act, violations of the Fair Debt Collection Practices Act, violations of RESPA, negligent misrepresentation, and equitable relief, and she also sued to quiet title. In her response to Bank of America's motion to dismiss the amended third-party complaint, however, she clarified that she was asserting claims against the bank only for breach of contract and vicarious liability for the RESPA violations of the bank's loan servicer. Riddle does not contest the district court's dismissal of her breach of contract claim, so this appeal concerns only the dismissal of her RESPA claims against Bank of America.

[3] The district court denied Bank of America's motion to dismiss the original third-party complaint because it was moot in light of Riddle's filing of the amended one.

[4] The appeal is interlocutory because the district court has not yet resolved all the claims raised against all parties. We have jurisdiction under 28 U.S.C. § 1291 because the district court designated its dismissal of the claims against Bank of America as a final judgment and expressly determined that there was no just reason for delay. *See* Judgment Pursuant to Rule 54(b), *Christiana Trust v. Riddle*, No. 6:16-CV-59-C (N.D. Tex. Oct. 16, 2017), ECF No. 38; *see also* Fed. R. Civ. P. 54(b) ("When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one [party] . . . only if the court expressly determines that there is no just reason for delay.").

No. 17-11429

II.

We review a district court's dismissal under Rule 12(b)(6) de novo. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). We may affirm the dismissal of a claim on any ground made manifest by the record below. *See id.* We affirm the district court's dismissal for two independent reasons. First, Riddle's amended third-party complaint fails to plead that Bank of America had an agency relationship with either Ocwen or BSI, an essential element of her vicarious liability theory. Second, as a matter of law, Bank of America cannot be held vicariously liable for the alleged RESPA violations of its loan servicer—regardless of whether the servicer is Bank of America's agent.

A.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Hinojosa v. Livingston*, 807 F.3d 657, 683–84 (5th Cir. 2015). Riddle's claim for relief, as articulated on appeal, asserts that Bank of America is vicariously liable for Ocwen's violations of 12 C.F.R. § 1024.41(c)(1). The Consumer Financial Protection Bureau (CFPB) promulgated this regulation pursuant to its rulemaking authority under RESPA. *See* 12 U.S.C. § 2605(k)(1)(E) (conferring this authority). The regulation imposes duties on servicers who "receive[] a complete loss mitigation application more than 37 days before a foreclosure sale." 12 C.F.R. § 1024.41(c)(1). When a servicer receives such an application,[5] the servicer

---

[5] "A loss mitigation application is simply a request by a borrower for any of a number of alternatives to foreclosure, known as loss mitigation options, including, among others, modification of the mortgage." *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1006 (11th Cir. 2016).

must—within thirty days of receiving the application—"evaluate the borrower for all loss mitigation options available to the borrower" and "provide the borrower with a notice . . . stating the servicer's determination of which loss mitigation options, if any, it will offer the borrower[.]" *Id.*

Riddle asserts that Ocwen and BSI received timely loss-mitigation applications but failed to consider them and notify Riddle of her loss-mitigation options.[6] Specifically, Riddle alleges the following in her amended third-party complaint:

> 44. Third-Party Defendants, Ocwen and BSI failed to comply with their RESPA obligations under 12 C.F.R. § 1024.41. Specifically, Ocwen and BSI violated 12 C.F.R. § 1024.41(c) because they received a complete or facially complete loss mitigation applications [sic] at least 37 days before a scheduled foreclosure sale, and yet failed to consider Mary for all loss mitigation options and notify Mary in writing of all loss mitigation options available to her.

*See* Counter-Plaintiff/Third-Party Plaintiff's First Amended Counterclaim and Third-Party Complaint at 12, *Christiana Trust*, No. 6:16-CV-59-C (N.D. Tex. Apr. 6, 2017), ECF No. 28.

Noticeably absent from this part of the pleading is any reference to Bank of America.  In opposition to Bank of America's motion to dismiss, Riddle claims that we should overlook this omission because "Ocwen was [Bank of America's] servicing agent" and Bank of America "is vicariously liable for the RESPA violations of its servicing agent."  Her amended third-party complaint does reference vicarious liability principles generally: she states that

---

[6] Riddle clarifies on appeal that Bank of America is vicariously liable "so long as it continues to own the loan" and that the bank relinquished ownership of the loan before BSI took over as the servicer.  For this reason, we do not look to Paragraph 45 of the complaint— which alleges further violations of 12 C.F.R. § 1024.41 only against BSI and Christiana Trust, based on conduct occurring after the assignment of the loan—for potential claims against Bank of America.

No. 17-11429

"mortagees [sic] can be vicariously liable for the RESPA violations of their servicers." The beginning of the complaint also states that whenever she alleges that a "Third-Party Defendant did, or failed to do" something, she means either (1) that the defendant itself did or failed to do it; or (2) that the defendant's "agents, officers, servants, employees, vice principals, or representatives" did or failed to do it and the defendants are liable under *respondeat superior*.

But Riddle's theory of vicarious RESPA liability theory requires pleading facts that suggest an agency relationship between Bank of America and either Ocwen or BSI. *Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable *for acts of their agents* or employees in the scope of their authority or employment.") (emphasis added). To determine whether an agency relationship exists, the Supreme Court looks to the Restatement of Agency, which requires both the principal's control over the agent and both parties' consent to the agent's acting on the principal's behalf. *Id.* at 286; *see also* Restatement (Third) of Agency § 1.01 cmt. f(1) (2006) ("An essential element of agency is the principal's right to control the agent's actions. . . . The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents.").

Riddle's amended third-party complaint alleges no such facts. Her statement that "mortagees [sic] can be vicariously liable for the RESPA violations of their servicers," sheds no light on the particular relationship between Bank of America and the two loan servicers. And her general *respondeat superior* statement at the beginning of the complaint runs in only one direction, telling us to read her allegations against principals to include allegations against agents—not vice versa. She never pleads a RESPA

No. 17-11429

violation by Bank of America, the putative principal, so this section does not help her. Without facts suggesting an agency relationship, even if everything Riddle alleges in her complaint is true, her complaint does not "state a [RESPA] claim" against Bank of America at all—let alone one that is "plausible on its face." *Hinojosa*, 807 F.3d at 683–84 (quoting *Iqbal*, 556 U.S. at 678). Accordingly, we affirm the district court's dismissal on this basis.

## B.

Even if Riddle had pleaded facts suggesting such a relationship, we hold in the alternative[7] that the district court appropriately dismissed her RESPA claim for another reason: Bank of America, as a matter of law, is not vicariously liable for the alleged RESPA violations of its servicers. This is an issue of first impression in our circuit, and we are apparently the first circuit court to address it.

By its plain terms, the regulation at issue here imposes duties only on servicers. 12 C.F.R. § 1024.41(c)(1) ("[A] *servicer* shall . . .") (emphasis added); *see also* 12 U.S.C. § 2605(i)(2), (i)(3) (defining a servicer as the "person responsible" for "receiving any scheduled periodic payments from a borrower . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan"). A loan servicer's obligation to follow this regulation derives from RESPA itself, which also confines this

---

[7] "This circuit follows the rule that alternative holdings are binding precedent and not obiter dictum." *Texas v. United States*, 809 F.3d 134, 178 n. 158 (5th Cir. 2015) (quoting *United States v. Potts*, 644 F.3d 233, 237 n. 3 (5th Cir. 2011)), *aff'd by an equally divided Court*, 136 S. Ct. 2271 (2016); *see also United States v. Reyes-Contreras*, No. 16-41218, 2018 WL 6253909, at *7 n. 19 (5th Cir. Nov. 30, 2018) (en banc).

obligation to servicers alone.[8]  Specifically, the statute provides that "a *servicer* of a federally related mortgage shall not . . . fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."    12 U.S.C. § 2605(k)(1)(E) (emphasis added); *see also* Amendments to the 2013 Mortgage Rules, 78 Fed. Reg. 60,382, 60,384 (Oct. 1, 2013) (citing this statutory provision, among others, as the authority for the regulation that Ocwen and BSI allegedly violated).  RESPA's answer on the ultimate question of § 2605 liability is similarly limited.  The statute prescribes that "[w]hoever fails to comply with any provision of this section shall be liable to the borrower for each such failure[.]"   12 U.S.C. § 2605(f).  Because only "servicers" can "fail to comply" with 12 U.S.C. § 2605(k)(1)(E), only servicers can be "liable to the borrower" for those failures.  12 U.S.C. § 2605(f).  The text squarely settles the issue.  *See Aviles v. Merit Systems Protection Bd.*, 799 F.3d 457, 465 (5th Cir. 2015) ("Because we conclude that the text of the amended statute . . . supports the Board's interpretation, we need not [analyze further].").

When Congress chose to impose RESPA duties more broadly, it did so clearly and explicitly.  The statute's prohibition on kickbacks and unearned fees states that "no person" shall engage in the forbidden conduct.  12 U.S.C. § 2607; *see also Hawk v. Carrington Mortgage Services, LLC*, No. 3:14-CV-1044, 2016 WL 4433665, at *2 (M.D. Pa. Aug. 17, 2016) (explaining this interpretive reasoning).  But Congress chose a narrower set of potential defendants for the violations that Riddle alleges here.  The difference matters. "When Congress includes particular language in one section of a statute but

---

[8] Riddle did not plead, and she does not argue on appeal, that Bank of America acted as a servicer itself.  So this case turns entirely on whether Bank of America can be held vicariously—not directly—liable.

omits it in another," we "presume[] that Congress intended a difference in meaning." *Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767, 777 (2018) (Ginsburg, J.) (alteration omitted) (quoting *Loughrin v. United States*, 134 S. Ct. 2384, 2390 (2014)); *see also, e.g., Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 626 (5th Cir. 2013) ("The use of the term 'whistleblower,' as compared with terms such as 'individual' or 'employee,' is significant."); *King v. St. Vincent's Hospital*, 502 U.S. 215, 220–21 (1991) ("Given the examples of affirmative limitations on reemployment benefits conferred by neighboring provisions, we infer that the simplicity of subsection (d) was deliberate."); *In re Burnett*, 635 F.3d 169, 172 (5th Cir. 2011) (interpreting a statute—which forbade government agencies from "deny[ing] employment to" a person in bankruptcy but prohibited private employers merely from "terminat[ing] the employment" of such a person—to allow private employers to deny employment to someone in bankruptcy); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012) ("[A] material variation in terms suggests a variation in meaning.").

Most of the district courts that have reached this issue agree with our reading of the statute. *See, e.g., Hawk*, No. 3:14-CV-1044, 2016 WL 4433665, at *2; *Green v. Cent. Mortg. Co.*, No. 3:14-CV-04281 LB, 2015 WL 7734213, at *15 (N.D. Cal. Dec. 1, 2015); *Bennett v. Nationstar Mortg., LLC*, No. CV 15-00165-KD-C, 2015 WL 5294321, at *10 (S.D. Ala. Sept. 8, 2015); *McAndrew v. Deutsche Bank Nat'l Trust Co.*, 977 F. Supp. 2d 440, 445 (M.D. Pa. 2013). The main case espousing a contrary view is *Rouleau v. US Bank, NA*, an unpublished opinion from the District of New Hampshire. No. 14-CV-568 JL, 2015 WL 1757104, at *7 (D. N.H. Apr. 17, 2015). The *Rouleau* court reasoned that RESPA creates "a species of tort liability." *Id.* (citing *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999)). The court observed that "when Congress creates a tort action, it legislates against a legal

background of ordinary tort-related vicarious liability rules." *Id.* (quoting *Meyer*, 537 U.S. at 285). Unless Congress has "expressed a contrary intent," its statutorily created torts "incorporate those rules." *Id.* (quoting *Meyer*, 537 U.S. at 285, 287). Seeing no contrary congressional intent, the *Rouleau* court concluded that RESPA incorporates principles of vicarious liability.

We decline to adopt *Rouleau*'s reasoning because it falls short even on its own terms. Congress *did* express an intent contrary to the incorporation of traditional vicarious liability rules. 12 U.S.C. § 2605(f) defines the parameters of § 2605 liability: "[w]hoever fails to comply with any provision of this section" is liable. This legislatively prescribed definition—which makes parties responsible solely for their own failures to comply—fundamentally conflicts with traditional vicariously liability, which imputes liability "based on the tortious acts *of another*." Restatement (Third) of Torts § 13 (2000) (emphasis added). Congress could have imposed § 2605 liability on "whoever fails to comply or whoever has hired an agent who fails to comply." It could have imposed liability on "whoever would be liable under traditional principles of tort law." It could have said nothing at all, perhaps leaving the common law as a gap filler. It could have imposed the statutory duty to ensure compliance with the CFPB's regulations not only on loan servicers, but also on lenders. But Congress did none of those things.

"The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there." *Asadi*, 720 F.3d at 622 (quoting *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004)) (internal quotation marks and alterations omitted). If a statute's text is "plain and unambiguous, it must be given effect." *BMC Software, Inc. v. C.I.R.*, 780 F.3d 669, 674 (5th Cir. 2015) (quoting *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 362 (5th Cir. 1995)); *see also United States v. Ary*, 892 F.3d 787, 789 (5th Cir. 2018) ("Our

inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (quoting *BedRoc*, 541 U.S. at 183) (alterations omitted).  The text of this statute plainly and unambiguously shields Bank of America from any liability created by the alleged RESPA violations of its loan servicer. Accordingly, we affirm the district court's dismissal on this basis.

### III.

The allegations of RESPA violations in Riddle's complaint fail to even mention Bank of America—let alone allege the agency relationship that her vicarious liability theory requires.  Accordingly, we AFFIRM the district court's dismissal on this basis.   And even if Riddle had pleaded such an agency relationship, the text of the regulation and statute at issue here plainly and unambiguously shields Bank of America from any liability arising from its loan servicer's alleged RESPA violations.  Accordingly, we alternatively AFFIRM the district court's dismissal on this independent basis as well.