**In re HAGGERTY.**

No. 46367.

District Court, E. D. New York.

May 10, 1946.

Max Schwartz, of New York City, for objecting creditor.

Watson, Kristeller & Swift, of New York City, for bankrupt.

BYERS, District Judge.

Motion to dismiss petition to review order of referee denying discharge.

The sole creditor of the above-named bankrupt has successfully contested his discharge before the referee, and the correctness of that ruling is contested under the following showing: The creditor, Quern, recovered a deficiency judgment in foreclosure of a mortgage executed by the bankrupt in June of 1941, which took the place of an unrecorded mortgage dated November 4, 1937, and which is the source of the creditor's status in this proceeding.

The specification of objection which was sustained is confined to the bankrupt's application for a loan to the National City Bank, dated February 4, 1941, over three years after Quern's claim arose; the loan was for $204, and was stated to have been sought to pay for medical service; that loan was paid in due course.

The specification is extended in form, as will be seen:

"1. That the bankrupt prior to the filing of the petition in bankruptcy, in order to obtain money and property on credit and/or obtain an extension or renewal of credit from the National City Bank, did make, issue and publish, in violation of the Bankruptcy Act, a false statement in writing, respecting his financial condition, in that the bankrupt issued a false financial statement in writing on February 4th, 1941 to the National City Bank respecting his financial condition, wherein the bankrupt stated, amongst other things, that the only lien against the property owned by him at 130 Kenilworth Place, Brooklyn, New York, was a mortgage of $6975.00 held by the Flatbush Savings Bank of Brooklyn and that he had no other loans outstanding and was making no installment payments and that all taxes, assessments and fire insurance were up to date except water taxes for $25.00 due February 1st, 1941, whereas in fact the bankrupt was indebted to Frederick G. Quern in a sum in excess of $5,000.00, which obligation was incurred by the bankrupt in connection with the purchase of the premises of 130 Kenilworth Place, Brooklyn, N. Y., and which purchase constituted a lien against the premises, evidenced by the unrecorded bond and third mortgage. That there was also outstanding a second mortgage against the property held by Winwell Realty Co.; the bankrupt was also indebted upon outstanding loans to Frederick G. Quern, Mary Jane Haggerty, Margaret Soden and Thomas F. Demic in excess of $3500.00, and the bankrupt was making installment payments upon said obligations, as well as to the Flatbush Savings Bank, and in addition the bankrupt was in arrears on taxes owing upon the said premises, and further, based upon the said statement, the bankrupt did obtain money by way of a loan from the National City Bank on or about February 6th, 1941 and said bankrupt issued the said statement knowing full well that the National City Bank would rely upon said statement, and the National City Bank upon reliance of said statement, did

grant a loan to the bankrupt on February 6th, 1941 for $204.00."

The specification is addressed to Section 14, sub. c(3) of the Act, 11 U.S.C.A. § 32, sub. c(3), which provides that the discharge shall be denied if it appears that the bankrupt "obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing or causing to be made or published in any manner whatsoever, a materially false statement in writing respecting his financial condition".

■ Collier (14th Edition) at page 1351 contains this resumé of the law as it has been expounded:

"It has been held that an intent to defraud is essential; the word 'false' means more than erroneous or untrue and imports an intention to deceive, and a materially false statement in writing must have been knowingly or intentionally untrue to bar a discharge. Intention to deceive is always material as an element of proof, and, by the weight of authority, such intent is an essential element. It must be shown that the bankrupt's alleged false statement in writing was either knowingly false or made so recklessly as to warrant a finding that he acted fraudulently. * * *"

Such of the numerous authorities in support of the text as the Court has been able to examine are in accord with the quotation.

■ Concededly, if the statement furnished to the bank fell within the prohibition of the statute, the bankrupt was under the burden of demonstrating a lack of intent to deceive the bank, and the record has been examined in the light of that understanding.

The referee has made thirty Findings of Fact, at the instance of the creditor, of which No. 25 concerning the alleged failure of the bankrupt to meet the burden above referred to, and No. 26 concerning the failure to ask a question of the representative of the National City Bank who testified, and No. 27 with regard to the failure to set forth the personal obligations of the bankrupt, namely, those referred to in Finding 28, seem to require attention; also Nos. 21 and 23.

It will be seen that the position of the objecting creditor is completely insulated from the influence of any equitable consideration whatever, since his position in 1937 could not have been influenced by anything that occurred in February of 1941, when the bankrupt procured his loan.

The bank which advanced him the money is not a creditor, and makes no contention whatever that it was misled by anything that the bankrupt said or did.

Mr. Daniel J. Gallagher, employed by the bank, was subpoenaed by the objecting creditor, and it appears that he was the one who received the application for the loan and probably recommended the bank's approval. His testimony is important, and therefore is quoted:

"Q. I show you this question—'applicant will list any obligations, loans outstanding here or elsewhere'. Do you recall whether Mr. Haggerty had any conversation with you with respect to his being indebted on personal loans to friends or relatives? A. No.

"Q. Had Mr. Haggerty had such a conversation with you at which he told you that he was indebted to friends and relatives would you have told him that it was perfectly all right to answer that question 'none' and to omit the personal indebtedness?

"Mr. Steel: I object to the question.

"The Referee: I will allow him to answer it.

"The Witness: Is his objection sustained?

"The Referee: No.

"The Witness: Will you be kind enough to read the question again? (Question read back by stenographer.) A. Yes.

"Q. You would have advised him that he could omit mentioning the personal indebtedness and answer the question 'none'? A. Right.

"Q. You would have advised him that he could have submitted a false answer to the question?

"Mr. Steel: I object to the question.

"The Referee: Objection sustained. Exception.

"Q. Would that answer have been true?

"Mr. Steel: I object to the question.

"The Referee: Objection sustained. Exception.

"Q. You have answered 'yes' to the hypothetical question. Will you tell me on what you based your answer 'yes'? A. Can I go into just a brief background as to why these questions are put here?

"Mr. Schwartz: No.

"The Referee: No.

"Mr. Steel: I think he puts a hypothetical question; he should be able to give his reason for his answer.

"The Witness: Counselor, these applications are granted on condition that the borrower makes monthly payments and the question regarding applications or loans outstanding here or elsewhere is to guide the credit man in determining whether the amount to be paid by the applicant to this Bank, together with other obligations, is more than what he can carry. If he owes moneys to individuals where there is no definite promise to pay or there is no instalment required, either monthly, weekly or semi-annually, then as the basis of determining that question of this particular applicant that situation is immaterial and irrelevant. Does that answer the question?

"The Referee: It doesn't answer it satisfactory to counsel.

"Mr. Schwartz: That answers the question.

"Q. You have no other recollection of any conversation with Mr. Haggerty?

"The Referee: You have no present recollection?

"The Witness: No, your Honor; that is quite a problem, counselor, when you interview 10,000 people a year you have to be guided by general principles that govern all interviews.

"By Mr. Steel:

"Q. When you gave your answer to the hypothetical question and gave your reasons for the answer, when you speak about loans would you characterize intimate family loans within that category? A. No.

"Q. For example, let us say a man had borrowed a few dollars from his mother; you wouldn't be interested in that, would you if there was no definite obligation to repay? A. No.

"By Mr. Schwartz:

"Q. Assuming the loans amounted to over $2000 that he was indebted to them, even though they be relatives, would that have entered into the picture? A. No.

"Q. No? A. No, counselor."

The foregoing demonstrates that the bank was not deceived; that the bankrupt did not intend to practice deception, appears from his own testimony:

"Q. What was said with respect to these advances from your parents? A. I told him that I was borrowing some money from members of my family and he wanted to know what they were so I told him they were moneys that I needed, and after we said the understanding was that I was to make every effort to pay my mother, my brother-in-law and my mother-in-law, but if for some reason—because he knew we were kind of hard pressed—I couldn't pay them it was all right, too, and I asked him if he wanted to put those in and he said no, the bank was not interested in those personal family loans. He wanted to know if I had any loans from the Morris Plan or any bank like the National City but the family loans he told me I didn't have to put them in, that the bank wouldn't be interested in them."

It will be seen that, at the time the witness Gallagher was on the stand, the objecting creditor did not see fit to examine him further as to whether the loan would have been granted if the bank had been "fully aware of all the circumstances and facts concerning the premises 130 Kennelworth (sic) Place, Brooklyn, New York" in the language of Finding 26.

Since the specification deals with the nature of the bankrupt's interest in the said premises, it is to be supposed that, had the objecting creditor intended to develop the bank's possible reliance upon so much of the application as is covered by the second page thereof, in which matters concerning this property are set forth, Gallagher would have been asked questions on the subject by the objecting creditor, whose witness he was. The failure to do so may explain

why the bankrupt's attorney likewise asked no such questions on cross-examination.

The section of the blank in question will be quoted:

"Applicant will state whether he owns home or other real estate: (If none, please state 'None')

"Name in which title appears...George Francis Haggerty

"Date Bought July 1937 Purchase Price $10500.00 Assessed value $20000.00

"Give details of mortgages or other liens against the property:

| | Mortgages or Contract Balance | Held By | | Date of Last Payment on Principal and Interest | Amount of Annual Payment |
|---|---|---|---|---|---|
| "(1) | $6975 | Flatbush Savings Bank, Bklyn, NY | | 2/1/41 | $650.00 |
| | | (Name) | (Address) | | |
| "(2) | $ | | | | $ |
| | | (Name) | (Address) | | |
| "(3) | $ | | | | $ |
| | | (Name) | (Address) | | |

"State whether or not installments and interest on the above mortgages or any other liens or encumbrances are past due: (If none, please state 'None'. If any, please give particulars) None

"State whether or not all taxes, assessments, and fire insurance are up to date: Water Tax 25.00 due 2/1/41

"Applicant will list any application or loans outstanding here or elsewhere (If none, state 'None')

Name of Bank,
Company or
Individual          Address
     None

"Applicant will list below any installment payments he is making: (If none, state 'None')

Name of Company     Address
   ·None"

The foregoing is taken from objector's Exhibit 3.

It is argued for the bankrupt that the foregoing is literally true because the nature of the objecting creditor's interest in the property on February 5, 1941, was such that no lien existed, because the mortgage given in 1937 was not acknowledged and therefore could not have been recorded.

That mortgage was not acceptable for record, at least not until it should be duly acknowledged by the mortgagor; but, as between the parties, it created an interest in real estate, and the application for the loan should have disclosed that there was such an outstanding interest in Quern, because the apparent showing was that of an equity in Haggerty of about $3500.00, and he must be deemed to have known otherwise.

It is urged for him, however, and such is the proof, that Quern loaned Haggerty the sum necessary, over and above the first mortgage, to enable him to purchase the property, and the indebtedness was evidenced by a bond and mortgage given at the time that title was acquired, as incidental to a larger agreement between them, that Quern was not only to receive back the amount that he advanced, when the property should be sold, but 25% of the profit; and the parties further agreed as to what the selling price should be at specified dates in the then future; it seems that Haggerty was not free to deal with the property as though it were his own, but he was required to sell only at the price stipulated in the agreement, which would depend upon the time when the sale was to be made, and to this extent the ownership of the property partook of the nature of a joint venture, the mortgage being given to protect Quern's interest in the event of his death prior to a sale.

The testimony is consistent with this understanding by the parties, because Quern advanced money from time to time to pay taxes, etc., in order that a sale might be rendered possible in a favorable market.

Thus there is some plausibility in Haggerty's assertion that he did not consider Quern's interest in the same light as one which would be represented by the ordinary purchase money mortgage given to enable him to acquire and dispose of the property according to his own notions and solely for his own benefit.

However, if the bank were to assert that Haggerty did indeed deceive it, and induced the making of the loan by concealing the true facts with regard to the title to this piece of real estate, it would be necessary to agree with that assertion; but the bank did not take that position, and Gallagher's testimony is consistent with the view that no attention was paid to the questions and answers above quoted (the known depression in real estate prices in 1941 may be the reason), but that the bank was concerned only in Haggerty's apparent ability to pay off the modest loan of about $200 in monthly installments out of his salary; incidentally that was accomplished, which explains why the bank is not before the Court as a creditor.

It is impossible to view the transaction with the bank on the part of Haggerty as though it involved anything more than what is called on the blank a "personal loan note". Quern's insistence that the bank must have been deceived, although it plainly testified to the contrary, should not have persuaded the referee. He should have realized that Quern is not in the position of a creditor who has relied upon a credit statement made to a mercantile agency, or to another creditor, for in 1937 he could not even have anticipated that in 1941 Haggerty would be seeking a personal loan such as is here involved.

What has been said with reference to Haggerty's representation concerning the absence of liens against the property, other than a first mortgage, also disposes of what he stated with reference to the income of the property, which the testimony showed was not more than $400.00 a year, instead of $700.00. That subject is not referred to in the specification of objection, and consequently Finding 18 is purely gratuitous.

Findings 18, 21, 23, 25, 26 and 27 are set aside as clearly erroneous, in view of the testimony of Gallagher, and as being opposed to the testimony as a whole, which failed to disclose that there was an intention to deceive the bank or that deception was in fact practiced by Haggerty when he procured the loan in question. For the same reason, conclusions 34 and 35 are set aside, and the objecting creditor's motion to dismiss the petition for review and for an order affirming the order of the referee of April 2, 1946, sustaining specification 1, and denying a discharge to the bankrupt, is denied, and the order of the referee will be reversed, and the bankrupt will be granted his discharge.

Settle order.