Berman v. Neo@Ogilvy LLC

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2014

Argued: June 17, 2015            Decided: September 10, 2015

Docket No. 14-4626

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -
DANIEL BERMAN,
    Plaintiff-Appellant,

            v.

NEO@OGILVY LLC, WPP GROUP USA, INC.,
    Defendants-Appellees.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Before: NEWMAN, JACOBS, and CALABRESI, Circuit Judges.

Appeal from the December 8, 2014, judgment of the United States District Court for the Southern District of New York (Gregory H. Woods, District Judge), dismissing, for failure to state a claim on which relief can be granted, an employee's suit claiming that his discharge violated the whistleblower protection provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act. The District Court ruled that these provisions protect only employees discharged for reporting violations to the Securities and Exchange Commission and not those reporting violations only

internally. *See Berman v. Neo@Ogilvy LLC*, No. 1:14-cv-523-GHW-SN, 2014 WL 6860583 (S.D.N.Y. Dec. 5, 2014).

Reversed and remanded. Judge Jacobs dissents with a separate opinion.

Alissa Pyrich, Jardim, Meisner & Susser, P.C., Florham Park, NJ (Bennet Susser, Richard S. Meisner, Jardim, Meisner & Susser, P.C., Florham Park, NJ, on the brief), for Appellant.

Howard J. Rubin, Davis & Gilbert LLP, New York, NY (Jennifer Tafet Klausner, David J. Fisher, Davis & Gilbert LLP, New York, NY, on the brief), for Appellees.

(William K. Shirey, Asst. Gen. Counsel, Washington, DC (Anne K. Small, Gen. Counsel, Michael A. Conley, Deputy Gen. Counsel, Stephen G. Yoder, Senior Counsel, Washington, DC), for *amicus curiae* Securities and Exchange Commission, in support of Appellant.)

(Kate Comerford Todd, U.S. Chamber Litigation Center, Inc., Washington, DC, Eugene Scalia, Gibson, Dunn & Crutcher LLP, Washington, DC (Rachel E. Mondel, Gabrielle Levine on the brief) for *amicus curiae* The Chamber of Commerce of the United States of America, in support of the Appellees.)

2

JON O. NEWMAN, <u>Circuit Judge</u>.

This appeal presents the recurring issue of statutory interpretation that arises when express terms in one provision of a statute are arguably in tension with language in another provision of the same statute. The Supreme Court recently encountered a similar issue when it interpreted a provision in the Patient Protection and Affordable Care Act in *Burwell v. King*, 135 S. Ct. 2480 (2015). In the pending case, the tension occurs within the whistleblower protection provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"). Pub. L. No. 111-203, Title IX, § 922(a), 124 Stat. 1376, 1841 (2010), which added section 21F to the Exchange Act of 1934, codified at 15 U.S.C. § 78u-6. The relevant administrative agency, the Securities and Exchange Commission ("SEC" or "Commission"), has issued a regulation endeavoring to harmonize the provisions that are in tension.

Plaintiff-Appellant Daniel Berman appeals from the December 8, 2014, judgment of the District Court for the Southern District of New York (Gregory H. Woods, District Judge), dismissing on motion for summary judgment his suit against Defendants-Appellees Neo@Ogilvie LLC and WPP Group USA, Inc. *See Berman v. Neo@Ogilvy LLC*, No. 1:14-cv-523-GHW-

3

SN, 2014 WL 6860583 (S.D.N.Y. Dec. 5, 2014). We conclude that the pertinent provisions of Dodd-Frank create a sufficient ambiguity to warrant our deference to the SEC's interpretive rule, which supports Berman's view of the statute. We therefore reverse and remand for further proceedings.

## Background

*The statutory and regulatory provisions.* Section 21F, added to the Exchange Act by Dodd-Frank, is captioned "Securities Whistleblower Incentives and Protection." 15 U.S.C. § 78u-6. Subsection 21F(b) provides the incentives by directing the SEC to pay awards to individuals whose reports to the Commission about violations of the securities laws result in successful Commission enforcement actions. *See* 15 U.S.C. § 78u-6(b). Subsection 21F(h) provides the protection by prohibiting employers from retaliation against employees for reporting violations. *Id.* § 78u-6(h).

This appeal concerns the relationship between the definition of "whistleblower" in section 21F and one subdivision of the provision prohibiting retaliation, which was added by a conference committee just before final passage. Subsection 21F(a), the definitions subsection of section 21F, contains subsection 21F(a)(6), which defines

4

"whistleblower" to mean "any individual who provides . . . information relating to a violation of the securities laws *to the Commission* . . . ." *Id.* 78u-6(a)(6) (emphasis added). Subsection 21F(h), the retaliation protection provision, contains subsection 21F(h)(1)(A), which provides:

(A) In General

No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—

(i) in providing information to the Commission in accordance with this section;

(ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or

(iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 *et seq.*), this chapter [*i.e.*, the Exchange Act], including section 78j-1(m) of this title [*i.e.*, Section 10A(m) of the Exchange Act], section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

*Id.* 78u-6(h)(1)(A).

The Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley"), Public L. No. 107-204, 116 Stat. 475 (2002), which is cross-referenced by subdivision (iii) of subsection 21F(h)(1)(A) of Dodd-Frank, includes several provisions concerning the

internal reporting of securities law violations or improper practices.

For example, section 307 of Sarbanes-Oxley requires the SEC to issue rules requiring an attorney to report securities law violations to the chief legal counsel or chief executive officer of the company. *See* 15 U.S.C. § 7245(1). Section 301 of Sarbanes-Oxley added to the Exchange Act section 10A(m)(4), requires the SEC by rule to direct national securities exchanges and national securities associations to require audit committees of listed companies to establish internal company procedures allowing employees to submit complaints regarding auditing matters. This section is not codified. Section 806(a) of Sarbanes-Oxley prohibits a publicly traded company from retaliating against an employee who provides information concerning securities law violations to, among other, a federal regulatory or law enforcement agency, a member of Congress, or "a person with supervisory authority over the employee." 18 U.S.C. § 1514A(a)(1).

This appeal concerns the arguable tension between the definitional subsection, subsection 21F(a)(6), which defines "whistleblower" to mean an individual who reports violations to the Commission, and subdivision (iii) of subsection

6

21F(h)(1)(A), which, unlike subdivisions (i) and (ii), does not within its own terms limit its protection to those who report wrongdoing to the SEC. On the contrary, subdivision (iii) expands the protections of Dodd-Frank to include the whistleblower protection provisions of Sarbanes-Oxley, and those provisions, which contemplate an employee reporting violations internally, do not require reporting violations to the Commission.

In statutory terms, the issue presented is whether the "whistleblower" definition in subsection 21F(a)(6) of Dodd-Frank applies to subdivision (iii) of subsection 21F(h)(1)(A). In operational terms, the issue is whether an employee who suffers retaliation because he reports wrongdoing internally, but not to the SEC, can obtain the retaliation remedies provided by Dodd-Frank.

The SEC believes he can. In 2011, using its authority to issue rules implementing section 21F, *see* 15 U.S.C. § 78u-6(j), the SEC promulgated Exchange Act Rule 21F-2, 17 C.F.R. § 240.21F-2, which provides:

(a) Definition of a whistleblower.

(1) You are a whistleblower if, alone or jointly with others, you provide the Commission with information pursuant to the procedures set forth in § 240.21F-9(a) of this chapter, and the

7

information relates to a possible violation of the Federal securities laws (including any rules or regulations thereunder) that has occurred, is ongoing, or is about to occur. A whistleblower must be an individual. A company or another entity is not eligible to be a whistleblower.

(2) To be eligible for an award, you must submit original information to the Commission in accordance with the procedures and conditions described in §§ 240.21F-4, 240.21F-8, and 240.21F-9 of this chapter.

(b) Prohibition against retaliation.

(1) For purposes of the anti-retaliation protections afforded by Section 21F(h)(1) of the Exchange Act (15 U.S.C. 78u-6(h)(1)), you are a whistleblower if:

(i) You possess a reasonable belief that the information you are providing relates to a possible securities law violation (or, where applicable, to a possible violation of the provisions set forth in 18 U.S.C. 1514A(a)) that has occurred, is ongoing, or is about to occur, and;

(ii) You provide that information in a manner described in Section 21F(h)(1)(A) of the Exchange Act (15 U.S.C. 78u-6(h)(1)(A)).

(iii) The anti-retaliation protections apply whether or not you satisfy the requirements, procedures and conditions to qualify for an award.[1]

---

[1] Just recently, on August 4, 2015, the SEC issued a release "to clarify that, for purposes of the employment retaliation protections provided by Section 21F of the Securities Exchange Act of 1934 ("Exchange Act"), an individuals's status as a whistleblower does not depend on adherence to the reporting procedures specified in Exchange

Echoing section 21F(a)(6) of Dodd-Frank, subsection 21F-2(a)(1) of Exchange Act Rule 21F-2 defines a whistleblower as a person who "provide[s] the Commission" with specific information. 17 C.F.R. § 240.21F-2(a)(1). However, subsection 21F-2(b) of the Rule, headed "Protection against retaliation," provides, in subdivision 21F-2(b)(ii) that, for purposes of the retaliation protections of Dodd-Frank, a person is a whistleblower if the person "provide[s]" specified information "in a manner described in" the retaliation protection provisions of Dodd-Frank, which includes the cross-reference in subdivision (iii) to the reporting provisions of Sarbanes-Oxley. *Id.* § 240.21F-2(b)(ii). Those provisions, as explained above, protect an employee who reports internally without reporting to the Commission.

As the SEC explained in its release accompanying issuance of Exchange Rule 21F-2, "the statutory anti-retaliation protections [of Dodd-Frank] apply to three

Act Rule 21F-9(a) [specifying procedures to be followed to qualify for a whistleblower award], but is determined solely by the terms of Exchange Act Rule 21F2(b)(1)." Interpretation of the SEC's Whistleblower Rules Under Section 21F of the Securities Exchange Act of 1934, SEC Release No. 34-75592, 2015 WL 4624264 (F.R.) (Aug. 4, 2015).

9

different categories of whistleblowers, and the third category [described in subdivision (iii) of subsection 21F(h)(1)(A)] includes individuals who report to persons or governmental authorities *other than the Commission*." Securities Whistleblower Incentives and Protections, Release No. 34-64545, 76 Fed. Reg. 34300-01, at *34304, 2011 WL 2293084 (F.R.) (June 13, 2011) (emphasis added).

So the more precise issue in the pending appeal is whether the arguable tension between the definitional section of subsection 21F(a)(6) and subdivision (iii) of subsection 21(F)(h)(1)(A) creates sufficient ambiguity as to the coverage of subdivision (iii) to oblige us to give *Chevron* deference to the SEC's rule. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

*The pending lawsuit.* Plaintiff-Appellant Daniel Berman was the finance director of Defendant-Appellee Neo@Ogilvy LLC ("Neo") from October 2010 to April 2013. He was responsible for Neo's financial reporting and its compliance with Generally Accepted Accounting Principles ("GAAP"), as well as internal accounting procedures of Neo and its parent, Defendant-Appellee WPP Group USA, Inc. ("WPP"). Neo

10

is a media agency that provides a range of digital and direct media services.

In January 2014, Berman sued Neo and WPP, alleging that he was discharged in violation of the whistleblower protection provisions of section 21F of Dodd-Frank and in breach of his employment contract. According to the allegation of the complaint, while employed at Neo, he discovered various practices that he alleged amounted to accounting fraud. He also alleged that these practices violated GAAP, Sarbanes-Oxley, and Dodd-Frank, and that he had reported these violations internally. A senior officer at Neo became angry with him, and he was terminated as a result of his whistleblower activities in April 2013. In August 2013 he reported his allegations to the WPP Audit Committee.

While employed at Neo and for about six months after he was fired, Berman did not report any allegedly unlawful activities to the SEC. In October 2013, after the limitations period on one of his Sarbanes-Oxley claims had ended, he provided information to the Commission.

Defendants' motion to dismiss the complaint was referred to Magistrate Judge Sarah Netburn. She filed a

11

Report & Recommendation ("R&R") recommending that Berman was entitled to be considered a whistleblower under Dodd-Frank because of the retaliation protection of subdivision (iii) of subsection 21F(h)(A)(1), unrestricted by the definition of "whistleblower" in subsection 21F(a)(6). However, the R&R also recommended that the retaliation claims be dismissed for legal insufficiency, without prejudice to amendment, and that the contracts claims be dismissed with prejudice.

The District Court, disagreeing with the Magistrate Judge, relied on the definition of "whistleblower" in subsection 21F(a)(6) and ruled that subsection 21F(h)(1)(A), including subdivision (iii), provided whistleblower protection only to those discharged for reporting alleged violations to the Commission. The District Court dismissed the Dodd-Frank claims because Berman had been terminated long before he reported alleged violations to the SEC. The District Court also rejected the contract claims and dismissed the entire complaint. *See Berman*, 2014 WL 6860583, at *6. Berman's appeal challenges only the dismissal of his Dodd-Frank claim.

Discussion

The statutory interpretation issue posed by this case is not as stark, and hence not as easily resolved, as that encountered in somewhat similar cases.[2]  In *Scialabba v. Cuellar de Osorio*, 134 S. Ct. 2191 (2014), for example, the express language of one clause of a subsection of a statute was contradicted by express language in another clause of

_____

[2] We start by posing the issue as one of statutory construction because Berman sued for violation of Dodd-Frank.  If we find the statute ambiguous, we will consider whether the SEC's regulation is a reasonable interpretation of the statute warranting *Chevron* deference.  The SEC begins its argument by asserting that "'[t]he interpretation of a statute by a regulatory agency charged with its administration is entitled to deference if it is a permissible construction of the statute.'" Brief for SEC at 17 (citing *Haekal v. Refco, Inc.*, 198 F.3d 37, 41 (2d Cir. 1999)).  Then the SEC points out that consideration of whether an agency interpretation is permissible requires two steps: first, considering whether there is an "unambiguously expressed intent of Congress," *Chevron*, 467 U.S. at 843, on "the precise issue in question," *id.* at 842, and, second, if the statute is silent or ambiguous, considering whether the agency's interpretation is "based on a permissible construction of the statute, *id.* at 843.

Although our approach and the SEC's both require initial interpretation of the statute, the reasons for that inquiry differ.  We start with the statute because that is the basis for Berman's claim.  His complaint does not mention the SEC's rule.  The SEC starts with the statute to determine whether its regulation is entitled to *Chevron* deference.  *Chevron*, in which the two-step analysis was outlined, was a suit challenging the validity of an agency regulation.

the same subsection. *See id.* at 2207 ("[T]he two halves of [8 U.S.C.] § 1153(h)(3) face in different directions."). In *Church of the Holy Trinity v. United States*, 143 U.S. 457 (1892), application of the express terms of a statute to the facts of a case yielded a result so unlikely to have been intended by Congress that the Supreme Court did not apply those terms.[3] *See id.* at 472 (declining to apply to a church's contract with a British pastor a prohibition on contracting to import an alien to perform labor of any kind).

Closer to our case is the issue the Supreme Court recently confronted in *Burwell v. King*. There, four words of one provision expressly provided that income tax subsidies were available to those who purchased health insurance on exchanges "established by a state," and the argument made to the Court was that the operation of the entire statute would be undermined if tax subsidies were not also available to those who purchased health insurance on

---

[3] *See also Yates v. United States*, 135 S. Ct. 1074, 1079 (2015) (declining to apply literal meaning of "tangible object" as used in Sarbanes-Oxley" to a fish); *Bond v. United States*, 134 S. Ct. 2077, 2091 (2014) (declining to apply express terms of definition of "chemical weapon" to toxic chemicals spread by a jilted wife on property of her husband's lover).

exchanges established by the federal government. A ~~closely~~ divided Court accepted that argument and interpreted the Affordable Care Act as a whole to provide income tax subsidies to those who purchased health insurance on federal exchanges.

The interpretation issue facing the Supreme Court in *King* was far more problematic than the issue we face here. In *King* the issue was whether the statutory phrase "established by the State" should be understood to mean "established by the State or by the Federal Government." In our case, the statutory provision relied on by the Appellees and our dissenting colleague contains the phrase "provide . . . to the Commission," but the issue is not whether that phrase means something other than what it literally says.[4] Instead, the issue is whether the statutory provision applies to another provision of the statute, or, more precisely, whether the answer to that question is sufficiently unclear to warrant *Chevron* deference to the Commission's regulation.

---

[4] We do not doubt that "provide . . . to the Commission" means "provide . . . to the Commission."

15

In our case there is no absolute conflict between the Commission notification requirement in the definition of "whistleblower" and the absence of such a requirement in both subdivision (iii) of subsection 21F(h)(1)(A) of Dodd-Frank and the Sarbanes-Oxley provisions incorporated by subdivision (iii). An employee who suffers retaliation after reporting wrongdoing simultaneously to his employer and to the SEC is eligible for Dodd-Frank remedies and those provided by Sarbanes-Oxley. Subdivision (iii) assures him the latter remedies, and his simultaneous report to the SEC assures him that he will not have excluded himself from Dodd-Frank remedies. Indeed, it was the possibility of simultaneous complaints to both the employer and the Commission that persuaded the Fifth Circuit to insist that the Commission notification requirement be observed by all employees who seek Dodd-Frank remedies for whistleblower retaliation. *See Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 627-28 (5th Cir. 2013).[5]

---

[5] By using the Fifth Circuit's example of "simultaneous" reporting to an employer and to the Commission, we recognize that a literal application of the definition of "whistleblower" to subdivision (iii) would also benefit those who reported to the Commission very soon after reporting to an employer, soon enough to do so before the employer retaliated by discharging the employee for the internal reporting (assuming the employer terminated *because of* both acts of reporting).

Although the simultaneous employer/Commission reporting example avoids an absolute contradiction between the Commission reporting requirement of the "whistleblower" definition and subdivision (iii)'s incorporation of Sarbanes-Oxley remedies, a significant tension within subsection 21F nevertheless remains. Applying the Commission reporting requirement to employees seeking Sarbanes-Oxley remedies pursuant to subdivision (iii) would leave that subdivision with an extremely limited scope for several reasons.

First, although there may be some potential whistleblowers who will report wrongdoing simultaneously to their employer and the Commission, they are likely to be few in number. Some will surely feel that reporting only to their employer offers the prospect of having the wrongdoing ended, with little chance of retaliation, whereas reporting to a government agency creates a substantial risk of retaliation.

Second, and more significant, there are categories of whistleblowers who cannot report wrongdoing to the Commission until after they have reported the wrongdoing to their employer. Chief among these are auditors and attorneys.

17

Auditors are subject to subsection 78j-1 of the Exchange Act, 15 U.S.C. § 78j-1, which is one of the provisions of Sarbanes-Oxley, expressly cross-referenced by subdivision (iii). Subsection 78j-1(b)(1)(B) requires an auditor of a public company, under certain circumstances, to "inform the appropriate level of the management" of illegal acts, unless they are inconsequential. *See* 15 U.S.C. § 78j-1(b)(1)(B). Subsection 78j-1(b)(2) requires an auditor to report to the board of directors if the company does not take reasonable remedial action after the auditor's report to management. *See id.* § 78j-1(b)(2). Significantly to our case, subsection 78j-1(b)(3)(B) permits an auditor to report illegal acts to the Commission only if the board or management fails to take appropriate remedial action. *See id.* § 78j-1(b)(3)(B). Thus, if subdivision (iii) requires reporting to the Commission, its express cross-reference to the provisions of Sarbanes-Oxley would afford an auditor almost no Dodd-Frank protection for retaliation because the auditor must await a company response to internal reporting before reporting to the Commission, and any retaliation would almost always precede Commission reporting.

Attorneys are subject to both section 307 of Sarbanes-Oxley, 15 U.S.C. § 7245, and the SEC's Standards of

18

Professional Conduct[6] ("Attorney Standards"), 17 C.F.R. § 205.1-7, and subdivision (iii) cross-references "any other law, rule, or regulation subject to the jurisdiction of the Commission." Subsection 7245(1) requires attorneys to report material violations of the securities laws to the chief legal counsel or chief executive officer ("CEO") of a public company, and subsection 7245(2) requires attorneys to report such violations to the audit or other appropriate committee of the board of directors if the counsel or CEO "does not appropriately respond to the attorney's internal reporting. 15 U.S.C. §§ 7245(1), (2). Again significantly to our case, the SEC's Rule 3 of its Attorney Standards contemplates an attorney reporting to the Commission only after internal reporting, *see* 17 C.F.R. § 205.3(d)(2), explicitly recognizing that by reporting internally first an attorney "does not reveal client confidences or secrets or privileged or otherwise protected information related to the attorney's representation of the issuer," *id.* § 205.3(b)(1). Like auditors, attorneys would gain little, if any, Dodd-Frank protection if subdivision (iii), despite cross-referencing Sarbanes-Oxley provisions protecting lawyers,

---

[6] The full title is "Standards of Professional Conduct for Attorneys Appearing and Practicing Before the Commission in the Representation of an Issuer." 17 C.F.R. § 205.1.

protected only against retaliation for reporting to the Commission.

Thus, apart from the rare example of simultaneous (or nearly simultaneous)[7] reporting of wrongdoing to an employer and to the Commission, there would be virtually no situation where an SEC reporting requirement would leave subdivision (iii) with any scope.

In light of these realities as to the sharply limiting effect of a Commission reporting requirement on all whistleblowers seeking the Sarbanes-Oxley remedies promised by Dodd-Frank for those who report wrongdoing internally, the question becomes whether Congress intended to add subdivision (iii) to subsection 21F(h)(1)(A) only to achieve such a limited result. To answer that question we would normally look to the legislative history of subdivision (iii) to learn what Congress, or the relevant committee, had sought to accomplish by adding subdivision (iii). *See, e.g., Vincent v. The Money Store,* 736 F.3d 88, 101 n.10 (2d Cir. 2013).

Unfortunately that inquiry yields nothing. What became subdivision (iii) of subsection 20F(h)(1)(A) was not in

---

[7] *See* footnote 5, *supra.*

either version of Dodd-Frank that was passed by the House and the Senate prior to a conference.[8] After these versions went to conference, the House Conferees prepared a "conference base text" to serve as the basis for resolution of differences by the Conference Committee.

Subdivision (iii) first saw the light of day in that conference base text when it was added to follow subdivisions (i) and (ii) of subsection 20F(h)(1)(A), both of which had been in the Senate version. Unfortunately, there is no mention of the addition of subdivision (iii),

---

[8] As originally submitted by the Administration on July 22, 2009, the "Financial Services Oversight Council Act of 2009" proposed adding section 21F to the Exchange Act. The Administration's proposal included subsection 21F(g)(1)(A), which entitled an employee to be made whole if discharged "for providing information " as provided elsewhere in the bill. As passed by the House of Representative on Dec. 11, 2009, the "Wall Street Reform and Consumer Protection Act of 2009" also proposed adding section 21F to the Exchange Act. The House version of section 21F included subsection 21F(g)(1)(A), which prohibited retaliation against an employee for "providing information to the Commission" as provided elsewhere in the bill, and subsection 21F(g)(4), which defined "whistleblower" as one or more individuals "who submit information to the Commission" as provided in section 21F. *See* H.R. 4173, 111th Cong., 1st Sess. (2009). As passed by the Senate on May 20, 2010, the "Restoring American Financial Stability Act of 2010" also proposed adding section 21F to the Exchange Act. The Senate version of section 21F included subsection 21F(a)(7), which copied the definition of "whistleblower" from H.R. 4173, and included in subsection 21F(h)(1)(A) the language that would become subdivisions (i) and (ii) of subsection 21F(h)(1)(A) of Dodd-Frank. *See* H.R. 4173, 111th Cong., 2d Sess. (2010).

much less its meaning or intended purpose, in any legislative materials – not in the conference report nor the final passage debates on Dodd-Frank in either the House or the Senate. The "Joint Explanatory Statement of the Committee of Conference" explains only that "[t]he subtitle [Subtitle B of Title IX] further enhances incentives and protections for whistleblowers providing information leading to successful SEC enforcement actions." H. Rep. No. 111-517, at 870 (2009-10) (Conf. Rep.). Subdivision (iii) is, like Judge Friendly's felicitous characterization of the Alien Tort Act, "a kind of legal Lohengrin; . . . no one seems to know whence it came." *ITT v. Vencap, Ltd.*, 519 F.2d 1001, 1015 (2d Cir. 1975), *abrogated on other grounds by Morrison v. National Australia Bank*, 561 U.S. 247 (2010) .

Other courts confronting the issue of whether the arguable tension between subsection 21F(a)(6) and subdivision (iii) of subsection 21F(h)(1)(A) warrants *Chevron* deference to Exchange Rule 21F-2 have reached conflicting results. The Fifth Circuit in *Asadi*, 720 F.3d at 620, and the District Court decision that *Asadi* affirmed, *Asadi v. G.E. Energy (USA), LLC*, Civ. Action No. 4:12-345, 2012 WL 2522599 (S.D. Tex. Jun. 28, 2012), both ruled the subsection 21F(a)(6) definition of "whistleblower"

22

controlling. Three other district courts have followed *Asadi. See Verfuerth v. Orion Energy Systems,* Inc., 65 F. Supp. 640, 643-46 (E.D. Wis. 2014); Banko *v. Apple Inc.*, 20 F. Supp. 3d 749, 756-57 (N.D. Cal. 2013); *Wagner v. Bank of America Corp.*, No. 12-cv-00381-RBJ, 2013 WL 3786643, at *4-*6 (D. Colo. July 19, 2013).

On the other hand, a far larger number of district courts have deemed the statute ambiguous and deferred to the SEC's Rule. *See Somers v. Digital Realty Trust,* Inc., No. C-14-5180 EMC, 2015 WL 2354807, at *4-*12 (N.D. Cal. May 15, 2015); *Yang v. Navigators Group,* Inc., 18 F. Supp. 3d 519, 533-34 (S.D.N.Y. 2014); *Khazin v. TD Ameritrade Holding Corp.* No. 13-4149 (SDWQ)(MCA), 2014 WL 940703, at *3-*6 (D.N.J. Mar. 11, 2014); *Azim v. Tortoise Capital Advisors,* LLC, No. 13-2267-KHV, 2014 WL 707235, at *2-3 (D. Kan. Feb. 24, 2014); *Ahmad v. Morgan Stanley &* Co., 2 F. Supp. 3d 491, 495-97 n.5 (S.D.N.Y 2014); *Rosenblum v. Thomson Reuters (Mkts.) LLC*, 984 F. Supp. 2d 141, 146-49 (S.D.N.Y. 2013); *Murray v. UBS Securities,* LLC, No. 12-5914, 2013 WL 2190084, at *4 (S.D.N.Y. May 21, 2013); *Ellington v. Giacoumakis*, 977 F. Supp. 2d 42, 44-46 (D. Mass. 2013); *Genberg v. Porter*, 935 F. Supp. 2d 1094, 1106-07 (D. Colo. 2013); *Nollner v. Southern Baptist Convention, Inc.*, 852 F. Supp. 2d 986, 995

(M.D. Tenn. 2012); *Kramer v. Trans-Lux Corp.*, No. 3:11CV1424 SRU, 2012 WL 4444820, at *4 (D. Conn. Sept. 25, 2012); *Egan v. Tradingscreen, Inc.*, No. 10 Civ. 8202, 2011 WL 1672066, at *4-7 (S.D.N.Y. May 4, 2011). Thus, although our decision creates a circuit split, it does so against a landscape of existing disagreement among a large number of district courts.

Like all these courts, we confront both the definition of "whistleblower" in subsection 21F(a)(6), which extends whistleblower protection only to employees who report violations to the Commission, and the language of subdivision (iii), which purports to protect employees[9] from retaliation for making reports required or protected by Sarbanes-Oxley, reports that are made internally, without notification to the Commission. We recognize that the terms of a definitional subsection are usually to be taken literally, *see* Antonin Scalia and Bryan A. Garner, "Reading

---

[9] The dissent chides us for stating that subdivision (iii) protects "employees" from retaliation for reporting violations, pointing out correctly that this subdivision does not use the word "employees." Dissenting op. **[5-6]**. However, subsection 21F(h)(1)(A), of which subdivision (iii) is a component, prohibits an "employer" from taking adverse action or discriminating against a whistleblower "in the terms or conditions of employment." Who but "employees" could be discriminated against by an "employer" in the terms and conditions of "employment?"

24

Law," 227 (2012) ("Ordinarily, judges apply text-specific definitions with rigor."), and, pertinent to this case, usually applied to all subdivisions literally covered by the definition, but we have also recognized that "mechanical use of a statutory definition" is not always warranted. *See In re Air Cargo Shipping Services Antitrust Litigation*, 697 F.3d 154, 163 (2d Cir. 2012). Scalia and Garner too have stated, "Definitions are, after all, just one indication of meaning – a very strong indication, to be sure, but nonetheless one that can be contradicted by other indications." Scalia and Garner 228. The issue here, however, is not whether to read the words of the definitional section literally, but the different issue of whether the definition should apply to a late-added subdivision of a subsection that uses the defined term.

In deciding whether sufficient ambiguity exists in Dodd-Frank to warrant deference to the SEC's Rule, we note, but are not persuaded by, the arguments that any reading would render some language of Dodd-Frank superfluous. Berman contends that if subdivision (iii) is subject to the Commission reporting requirement by virtue of subsection 21F(a)(6), then most of subdivision (iii) would be superfluous because the Sarbanes-Oxley protections

25

purportedly incorporated would have no effect. The SEC argues that if the definition of "whistleblower" applies to all three subdivisions of subsection 21F(h)(1)(A), then the Commission reporting requirement, expressly stated in subdivisions (i) and (ii), would be superfluous. Neo contends that if subdivision (iii) does not require an employee to report violations to the Commission, then the SEC reporting requirement in subsection 21F(a)(6) would be superfluous.

All these arguments ignore the realities of the legislative process. When conferees are hastily trying to reconcile House and Senate bills, each of which number hundreds of pages, and someone succeeds in inserting a new provision like subdivision (iii) into subsection 21F(h)(1)(A), it is not at all surprising that no one noticed that the new subdivision and the definition of "whistleblower" do not fit together neatly.[10] The definition speaks of reporting to the Commission, but subdivision (iii) incorporates Sarbanes-Oxley provisions, which contemplate internal reporting, without reporting to the Commission. Subdivisions (i) and (ii), which were included in the Senate

_____

[10] "True ambiguity is almost always the result of carelessness or inattention." Scalia and Garner 33.

26

version of Dodd-Frank before the conferees met, fit precisely with the "whistleblower" definition. Subdivision (i) explicitly requires reporting "to the Commission," and subdivision (ii) concerns assisting action "of the Commission," whereas the terms of subdivision (iii) do neither.[11]

When the conferees, at the last minute, inserted subdivision (iii) within subsection 21F(h)(1)(A), did they expect subdivision (iii) to be limited by the statutory definition of "whistleblower" in subsection 21F(a)(6), or did they expect employees to be protected by subdivision (iii) whenever they report violations internally, without reporting to the Commission?[12]  The texts leave the matter unclear, and no legislative history even hints at an answer.

---

[11] Subdivision (iii) mentions the Commission only to provide that the protection of (iii) extends to Sarbanes-Oxley disclosures required by any "law, rule, or regulation subject to the jurisdiction of the Commission." 15 U.S.C. § 78u-6(h)(1)(A)(iii).

[12] Or, to put the matter another way, did the conferees deliberately decide to insert subdivision (iii) in subsection 21F(h)(1)(A), knowing it would arguably be subject to the subsection 21F(a)(6) definition of "whistleblower," rather than add the text of subdivision (iii) elsewhere so that it would not even arguably be subject to that definition?

27

Ultimately, we think it doubtful that the conferees who accepted the last-minute insertion of subdivision (iii) would have expected it to have the extremely limited scope it would have if it were restricted by the Commission reporting requirement in the "whistleblower" definition in subsection 21F(a)(6). If we had to choose between reading the statute literally or broadly to carry out its apparent purpose, we might well favor the latter course. However, we need not definitively construe the statute, because, at a minimum, the tension between the definition in subsection 21F(a)(6) and the limited protection provided by subdivision (iii) of subsection 21F(h)(1)(A) if it is subject to that definition renders section 21F as a whole sufficiently ambiguous to oblige us to give *Chevron* deference to the reasonable interpretation of the agency charged with administering the statute. Unlike the situation confronting the Supreme Court in *King*, where the agency administering the disputed provision, the Internal Revenue Service, was deemed to lack relevant expertise, *King*, 135 S. Ct. at 2489, obliging the Court itself to resolve the ambiguity, *see id.*, the SEC is clearly the agency to resolve the ambiguity we face. Therefore, also unlike *King*, we need not resolve the

28

ambiguity ourselves, but will defer to the reasonable interpretive rule adopted by the appropriate agency.

Under SEC Rule 21F-2(b)(1), Berman is entitled to pursue Dodd-Frank remedies for alleged retaliation after his report of wrongdoing to his employer, despite not having reported to the Commission before his termination. We therefore reverse and remand for further proceedings. On remand, the District Court will have an opportunity to consider the R&R's recommendation to dismiss, without prejudice to amendment, for lack of a sufficient allegation of a termination entitled to Dodd-Frank protection, and any other arguments made by the Defendants in support of their motion to dismiss.

Reversed and remanded.

DENNIS JACOBS, <u>Circuit Judge</u>, dissenting:

The majority and the Securities and Exchange Commission ("SEC") have altered a federal statute by deleting three words ("to the Commission") from the definition of "whistleblower" in the Dodd-Frank Act. No doubt, my colleagues in the majority, assisted by the SEC or not, could improve many federal statutes by tightening them or loosening them, or recasting or rewriting them. I could try my hand at it. But our obligation is to apply congressional statutes as written. In this instance, the alteration creates a circuit split, and places us firmly on the wrong side of it. <u>See</u> <u>Asadi v. G.E. Energy (USA), LLC</u>, 720 F.3d 620 (5th Cir. 2013). I respectfully dissent.

## I

Persons who report certain violations of the securities laws are protected from retaliation under (at least) two federal statutes. Sarbanes-Oxley protects employees who blow a whistle to management or to regulatory agencies; Dodd-Frank protects "whistleblowers," defined as persons who report violations "to the Commission." 15 U.S.C. § 78u-6(a)(6). Dodd-Frank has a longer statute of limitations, doubles the collectible back-pay, and requires no administrative

1

exhaustion.  The plaintiff in this case reported the violation to his employer, and

did not report it "to the [Securities and Exchange] Commission," id., and he is

therefore protected from retaliation under Sarbanes-Oxley only.  But the SEC and

the majority perceive a hole in coverage, or an insufficiency of remedy, and are

patching.

The statutory provisions relevant to this case are few.  The Dodd-Frank Act

defines the word "whistleblower" in one sentence, and provides that this

definition "shall apply" anywhere else "[i]n this section":

**(a) Definitions**

In this section the following definitions shall apply:

[...]

> **(6) Whistleblower**
>
> The term "whistleblower" means any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws to the [Securities and Exchange] Commission, in a manner established, by rule or regulation, by the Commission.

15 U.S.C. § 78u-6(a)(6).  "This definition, standing alone, expressly and

unambiguously requires that an individual provide information to the SEC to

qualify as a 'whistleblower' for purposes of § 78u-6."  Asadi, 720 F.3d at 623.  A

2

definition is one of the "prominent manner[s]" for limiting the meaning of statutory text. <u>King v. Burwell</u>, 135 S. Ct. 2480, 2495 (2015); <u>see also</u> <u>United States v. DiCristina</u>, 726 F.3d 92, 99 (2d Cir. 2013) (quoting <u>Groman v. IRS</u>, 302 U.S. 82, 86 (1937) ("When an exclusive definition is intended the words 'means' is employed.")).

Later, within the same statutory section, in a provision titled "Protection of whistleblowers," Dodd-Frank creates a private cause of action for "whistleblowers":

**(h) Protection of whistleblowers**

(1) Prohibition against retaliation

(A) In general

No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a *whistleblower* in the terms and conditions of employment because of any lawful act done by the *whistleblower*--

(i) in providing information to the Commission in accordance with this section;

(ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or

> (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j-1(m) of this title, section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

15 U.S.C. § 78u-6(h)(1)(A)(emphases added).

Reading the definition and the substantive provision together "clearly answers two questions: (1) who is protected; and (2) what actions by protected individuals constitute protected activity." Asadi, 720 F.3d at 625. As the Fifth Circuit put it, "the answer to the first question is 'a whistleblower.'" Id. (quoting 15 U.S.C. § 78u-6(h)(1)(A) ("No employer may discharge . . . a *whistleblower* . . . ." (emphasis added))). And, just as easy, "the answer to the latter question is 'any lawful act done by the whistleblower' that falls within one of the three categories of action described in the statute." Id. (quoting 15 U.S.C. § 78u-6(h)(1)(A)).

Berman alleges that he made "disclosures that are required or protected under the Sarbanes-Oxley Act of 2002," 15 U.S.C. § 78u-6(h)(1)(A)--in particular, he alleges that he reported a securities law violation to his employer. But he does not allege facts that make him a "whistleblower" as that term is defined in Dodd-Frank. Nor could he--he concedes that before his termination, he never reported anything "to the [Securities and Exchange] Commission." 15 U.S.C. § 78u-6(a)(6).

4

**II**

The majority hardly disputes that my reading (and the reading given in Asadi) is the more natural reading of the statute. But the majority extends deference to an SEC regulation that alters the unambiguous definition of "whistleblower" to include anyone who reports a securities law violation "in a manner described in . . . 15 U.S.C. 78u-6(h)(1)(A)," 17 C.F.R. § 240.21F-2(b)(1), including those who report a securities violation to their employer only. According to the majority, there is "arguable tension," Maj. Op. at 7, between the definition and the substantive whistleblower-protection provisions, and that is deemed enough for the SEC's interpretation to survive under Chevron. I would apply the unambiguous statutory text.

**A.** The majority assumes its own conclusion, claiming that "subdivision (iii) [of 15 U.S.C. § 78u-6(h)(1)(A)] . . . purports to protect *employees* from retaliation for making reports required or protected by Sarbanes-Oxley". Maj. Op. at 25 (emphasis added). That is a bad misreading, tantamount to a misquotation. Dodd-Frank's whistleblower-protection provisions do not mention this (generic) employee. Instead, the statute lists three ways that *"a whistleblower"* may take protected activity (in one case, by making disclosures

5

protected under Sarbanes-Oxley, <u>see</u> 15 U.S.C. § 78u-6(h)(1)(A)(iii)). And

"whistleblower" is a defined term. So subdivision (iii) only protects someone

who (1) makes a protected disclosure under Sarbanes-Oxley, and (2) also satisfies

Dodd-Frank's definition of "whistleblower." If the statute used the word

"employee[]," Maj. Op. at 25, Berman might have a claim. He does not because

the phrasing is a coinage of the majority.

The majority asks: "Who but 'employees' could be discriminated against

by an 'employer' in the terms and conditions of 'employment?'" Maj. Op. at 25

n.9. My answer? A whistleblower. (Congress apparently agrees. <u>See</u> 15 U.S.C.

§ 78u-6(h)(1)(A) ("No employer may . . . discriminate against[] a whistleblower in

the terms and conditions of employment . . . .").)

The (generic) "employee" is nevertheless protected: in the *Sarbanes-Oxley*

whistleblower-protection provision. <u>See</u> 18 U.S.C. § 1514A(a) (a publicly-traded

company may not "discriminate against *an employee*" because of lawful

whistleblowing activity) (emphasis added). The majority ignores the distinction

Congress drew in the two statutes.

**B.** The majority claims repeatedly that "the issue presented is whether the

'whistleblower' definition in subsection 21F(a)(6) of Dodd-Frank applies to

6

subdivision (iii) of subsection 21F(h)(1)(A)."  Maj. Op. at 7; <u>see also</u> <u>id.</u> at 15-16.

To answer that question, the majority looks here, there and everywhere--except

to the statutory text.  But the definitions section is unambiguous: "*In this section*

*the following definitions shall apply.*"  15 U.S.C. § 78u-6(a) (emphasis added).

And all of the relevant statutory provisions in this case appear "[i]n this

section"--that is, section 78u-6 of title 15 of the U.S. Code.  Accordingly, when

Congress used the word "whistleblower" in 15 U.S.C. 78u-6(h)(1)(A), it "mean[t]

any individual who provides . . . information relating to a violation of the

securities laws to the Commission."  15 U.S.C. § 78u-6(a)(6).

The thing about a definition is that it is, well, definitional.

**C.**  What appears to animate the majority's finding of "arguable tension" is

that the natural reading of the statutory text would leave 15 U.S.C.

§ 78u-6(h)(1)(A)(iii) with "extremely limited scope," Maj. Op. at 17, affording

incremental protection only for individuals who suffer retaliation for reporting to

their employer after having already made a report to the SEC.  But the majority

simply assumes that this would be a "rare example," Maj. Op. at 20, because the

two reports would have to be "simultaneous," Maj. Op. at 16, or at least "nearly

simultaneous," Maj. Op. at 20, and that, because simultaneity would be so rare,

7

Congress could not have bothered its head over it. The majority does not explain why simultaneous reporting is required. I cannot see why it would be. Moreover, someone might well fire off complaints of illegal activity more or less at once to one or more of everyone and anyone who might listen: corporate officers or directors, the SEC, the newspaper, a prosecutor, members of Congress, and so on.

In any event, the majority has no support for the proposition that when a plain reading of a statutory provision gives it an "extremely limited" effect, the statutory provision is impaired or ambiguous. The U.S. Code is full of statutory provisions with "extremely limited" effect; there is no canon that counsels reinforcement of any sub-sub-sub-subsection that lacks a paradigm-shift.[1] The majority is thrown back on what it calls euphemistically "the realities of the legislative process." Maj. Op. at 27. By that, it is suggested that Congress is too

_____

[1]    The majority properly disclaims reliance on the absurdity canon, <u>see</u> Maj. Op. at 14, presumably recognizing that there is nothing absurd about a plain reading of the whistleblower definition in Dodd-Frank. <u>Compare</u> <u>Church of the Holy Trinity v. United States</u>, 143 U.S. 457, 460 (1892) ("If a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity.").

busy or confused to draft wording that achieves goals consistent with the intent

of the SEC.[2]

    **D.** The majority observes that the statutory text as written gives "little, if

any" protection to lawyers who report violations to employers only, or do so

first--and who may be required to do so. Maj. Op. at 20. As the majority

explains, lawyers and auditors are subject to a web of statutory, contractual, and

ethical obligations that impact the timing and manner in which they report

violations, whether to employers or to regulatory agencies or to prosecutors.

Sometimes these obligations require disclosure; sometimes they require

confidentiality. Congress may well have considered that additional incentives

should not be offered to get lawyers and auditors to fulfill existing professional

duties, for the same reason reward posters often specify that the police are

ineligible.

---

   [2]   The regulation at issue reflects the SEC's territorial interests, not its own reading. Until only yesterday or so, a separate SEC regulation specified the procedures by which a Dodd-Frank whistleblower "must" report a violation--either by mail or fax "to the SEC Office of the Whistleblower" in Washington, D.C., or online through the SEC's website. See 17 C.F.R. § 240.21F-9(a). After oral argument, the SEC issued an "interpretive rule" amending its regulations to conform to the error it has (successfully) argued here. See SEC Release No. 34-75592, 80 Fed. Reg. 47,829 (Aug. 10, 2015).

**III**

The majority relies almost wholly on <u>King v. Burwell</u>, 135 S. Ct. 2480

(2015). That case does not do the work the majority needs done.

**A.** <u>King v. Burwell</u> is not a wholesale revision of the Supreme Court's

statutory interpretation jurisprudence, which for decades past has consistently

honored plain text over opportunistic inferences about legislative history and

purpose. Had the Supreme Court intended an avulsive change, it would not

have done so <u>sub silentio</u>. Just ten days before <u>King v. Burwell</u> came down, the

Court reinforced and applied the principle that a judge's "job is to follow the text

even if doing so will supposedly undercut a basic objective of the statute." <u>Baker</u>

<u>Botts LLP v. ASARCO LLC</u>, 135 S. Ct. 2158, 2169 (2015) (internal quotation marks

omitted); <u>see also</u> <u>id.</u> (Sotomayor, <u>J.</u>, concurring in part and concurring in the

judgment) ("Given the clarity of the statutory language, it would be improper to

allow policy considerations to undermine the American Rule in this case.").

Nothing in <u>King v. Burwell</u> suggests that, in the fortnight that intervened after

<u>ASARCO</u>, the Court repented of that holding--let alone the scores of cases

preceding <u>ASARCO</u> that say the same thing. <u>See, e.g.,</u> <u>Pavelic & LeFlore v.</u>

Marvel Entm't Grp., 493 U.S. 120, 126 (1989) ("Our task is to apply the text, not to improve upon it.").

**B.** To the extent the Supreme Court departed from the plain statutory text in King v. Burwell, it expressly relied on most unusual circumstances. The Court adapted wording to avoid what it considered the upending of a ramified, hugely consequential enactment: "Congress passed the Affordable Care Act to improve health insurance markets, not to destroy them." 135 S. Ct. at 2496.

Here, the sole consequence of applying the statute as written is that those who report securities violations only to their employer will receive statutory protection that in the SEC's view is sub-optimal. They will be protected under Sarbanes-Oxley, but not Dodd-Frank--that is, they will enjoy the same protection every securities whistleblower had before the passage of Dodd-Frank in 2010, and more protection than any securities whistleblower had before the passage of Sarbanes-Oxley in 2002. No markets collapse, no castles fall. A shorter statute of limitations may be inconvenient for some plaintiffs, but it does not threaten the entire statutory scheme. The only palpable danger lurking here is that bureaucrats and federal judges assume and exercise power to redraft a statute to give it a more respectable reach.

King v. Burwell was not animated by a perceived need to afford greater impact to a small phrase; to the contrary, the Court rejected the idea that "Congress made the viability of the entire Affordable Care Act turn on the ultimate ancillary provision: a sub-sub-sub section of the Tax Code." 135 S. Ct. at 2495. In rejecting that approach, the Court emphasized that categorical guidance as to congressional intent should better be looked for in a more predictable location--*like a definitions section*:

> Had Congress meant to limit tax credits to State Exchanges, it likely would have done so in the definition of 'applicable taxpayer,' or in some other prominent manner. It would not have used such a winding path of connect-the-dots provisions about the amount of the credit.

Id.

For the purpose of the provision at issue here, Congress expressed its meaning in a "prominent manner"--in the definitions section. That is exactly where the Court said one should look, and where the Court said that Congress *should have* inserted its limiting language about Affordable Care Act subsidies if it wanted the language interpreted strictly. In our case the majority follows the sort of "winding path of connect-the-dots provisions" that the Supreme Court ridiculed.

12

\* \* \*

I vote to affirm. "If the statutory language is plain, we must enforce it according to its terms." <u>King v. Burwell</u>, 135 S. Ct. at 2489. The Court did not mean in <u>King v. Burwell</u> to revisit the era when judges could cast aside plain statutory text just because they harbor "doubt[s]" about what was going on in the heads of individual "conferees" during the legislative process. <u>See</u> Maj. Op. at 28.